132 N.J. Super. 324 (1975)
333 A.2d 559
FRED S. BOYD, JR., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
RAPHAEL MARINI, DIRECTOR OF MOTOR VEHICLES, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1974.
Decided January 29, 1975.
*326 Before Judges MATTHEWS, FRITZ and BOTTER.
Mr. Frank P. Addas argued the cause for appellant and cross-respondent (Messrs. James & Addas, attorneys).
Mr. Jerry M. Finn argued the cause for respondent and cross-appellant (Messrs. Goldberger, Siegel & Finn, attorneys).
The opinion of the court was delivered by FRITZ, J.A.D.
The only issues involved in this appeal by the Director of the Division of Motor Vehicles (Director) in a "hit and run" case and a subsequent application for payment *327 from the Unsatisfied Claim and Judgment Fund (Fund), are (a) whether the amendment to N.J.S.A. 39:6-84, raising the limit of one person payment to $15,000 from the previous $10,000 limit (L. 1972, c. 198, § 5 at 761) applies to all judgments entered after the amendment, irrespective of the fact that the accident producing the judgment  in this case October 23, 1971  may have occurred prior to the amendment date, and (b) whether prejudgment interest should attach pursuant to R. 4:42-11(b) (and see R. 4:58). The judge below answered these inquiries in the affirmative.
Subsequent legislative consideration of the problem satisfies us, as will appear, that without the benefit of that legislative action the judge below erred in regard to the first issue. We agree with his determination of the latter issue.
The problem with respect to whether the 1972 amendment was to be applied to accidents occurring prior to its effective date in cases where a judgment was entered subsequent to that date arose from the failure of the Legislature to specify a "cut-off date" in that legislation as it had in prior enactments (L. 1952, c. 174, § 18 at 585; L. 1958, c. 99, § 9 at 563). The question became one of whether the omission was inadvertent or whether it was intentionally designed in order to provide for retroactive benefits. This question could be answered only by an ascertainment of legislative intent. Rothman v. Rothman, 65 N.J. 219 (1974). The history of the enactment offered little light on the path in this quest except for the difference from prior enactments. This difference served more to confuse than enlighten, since either of the two contradictory interpretations might easily be inferred.
Then, as a direct result of the judgment in this suit the Legislature told us precisely what it did mean and explained to us precisely what its intent was. We take judicial notice (Evid. R. 9) of the fact that, without a single negative vote, both houses passed and sent to the Governor for his signature a bill filling in the gap and, similarly to its predecessors, *328 setting a "cut-off date." Assembly Bill 81, 196th New Jersey Legislature. The statement appended to the bill recited its motivation by the judgment of "[a] recent court decision interpret[ing] the new limits to apply to accidents occurring before [the effective date of the enactment]."
Now we can with certainty declare what the intent of the Legislature was when it enacted L. 1972, c. 198, § 5. We need not guess; they have told us.
We see no reason why this subsequent legislative advice should not be acceptable as a convincing extrinsic aid to an interpretation of the earlier law. It is difficult to conceive a source to which more thoughtful consideration should be given than the collective (and undissenting) author of the legislation speaking to the precise problem. As is pointed out in 2A Sutherland on Statutory Construction (4 ed.) § 49.01, 228:
The extrinsic aids of statutory construction include information about circumstances existing and events occurring at or after the time when a statute goes into effect. Use of legislative intent as the governing criterion for interpretation has a tendency, in general, to focus attention on circumstances and events of the time when a bill was enacted. But circumstances and situations developing after the enactment of a statute may be of great or even conclusive significance in determining what meaning was conveyed. * * * [Footnote omitted]
The same text specifically reports that "where * * * a doubtful meaning of a former statute [is] rendered certain by subsequent legislation a number of courts have held that such * * * subsequent legislation is strong evidence of what the legislature intended by the first statute." Id., § 49.11, at 265.
We do not hold that such an extrinsic aid is controlling. The circumstances of a given case may impose the serious consideration of other extrinsic aids, or indeed commend the rejection of consideration of the subsequent legislation. But this presents no problem here, for we are entirely *329 satisfied that the circumstances of this case do warrant controlling application.
It is to be noted, as well, that the result here is consistent with prior interpretations holding time and place of the accident determinative of rights under the act. Rudnick v. Bentler, 66 N.J. Super. 224 (App. Div. 1961); Brown v. Unsatisfied Claim and Judgment Fund Bd., 96 N.J. Super. 91 (Law Div. 1967), aff'd 101 N.J. Super. 299 (App. Div. 1968), certif. den. 53 N.J. 77 (1968).
With respect to the interest question, Crudup v. Marrero, 57 N.J. 353 (1971), is ample authority to justify the application of the prejudgment interest rule, R. 4:42-11(b), against the Fund in this case. Beyond the force of rules of court in this respect (see Busik v. Levine, 63 N.J. 351 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973)), the legislative intent in such regard is quite clear by virtue of the specific exclusion of interest and costs from the limits imposed by the statute. Thus we resolve the conflict between Lynch v. Heymann, 119 N.J. Super. 151 (Law Div. 1972), and Bellino v. Strelecki, 121 N.J. Super. 331 (Law Div. 1972), in favor of the latter and expressly disapprove the holding in Lynch.
Nonetheless, the application of the rule against the Fund in any given case remains a matter of the sound exercise of judicial discretion in the circumstances of the case. Crudup v. Marrero, supra, 57 N.J. at 362. Here, where the only offer from the Fund was belatedly made at the outset of the damages trial and after the adjudication of liability, we do not fault the discretion of the trial judge in imposing interest.
The suggestion of plaintiff, the subject of his cross-appeal here, that interest should have been imposed against the Fund on the total amount of the damage judgment, $125,000, is frivolous. That interest should be available on a principal sum for which the interest payor has no responsibility is so illogical, unfair and alien to the purposes for which interest is imposed (see Busik v. Levine, supra, 63 *330 N.J. at 358) that it unquestionably cannot be said to have been within legislative intendment in the statute in question. As Judge Foley, then a County Court judge, so aptly noted in Pistoria v. Buckowski, 46 N.J. Super. 495, 496 (Law Div. 1957), "[W]hen interest was mentioned [in the statute] in connection with the sum payable, it was intended that the Fund should be charged with the benefit of the use of the money to which the plaintiffs became entitled to payment."
We note the entry of a consent order below providing for the payment of $10,000 from the Fund, and we presume that has been paid. Judgment in this court is entered consistent with all the foregoing. The matter is remanded for the entry of an order directing payment from the Fund by the State Treasurer, pursuant to statute, of prejudgment interest on $10,000 from April 23, 1972 until the date of payment as aforesaid, and taxed costs in this court.