NEW JERSEY TURNPIKE AUTHORITY, PETITIONER-AP-
PELLANT, v. TOWNSHIP OF WASHINGTON, A MUNICI-
PAL CORPORATION OF THE STATE OF NEW JERSEY,
DEFENDANT-RESPONDENT.

NEW JERSEY TURNPIKE AUTHORITY, PETITIONER-AP-
PELLANT, v. TOWNSHIP OF MANALAPAN, A MUNICI-
PAL CORPORATION OF THE STATE OF NEW JERSEY,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 3, 1975—Decided December 4, 1975.

544

Before Judges ALLCORN, KOLE and GAULKIN.

*Mr. Bernard M. Reilly* argued the cause for appellant (*Mr. Herbert I. Olarsch,* attorney).

*Mr. Henry F. Satterthwaite* argued the cause for respondent Township of Washington (*Messrs. Satterthwaite and Satterthwaite,* attorneys).

*Mr. Marvin E. Schaefer* argued the cause for respondent Township of Manalapan (*Mr. W. Peter Ragan* on the brief).

The opinion of the court was delivered by

KOLE, J. A. D.    These consolidated appeals arise from judgments of the Division of Tax Appeals against the New Jersey Turnpike Authority (Authority) and in favor of the Townships of Manalapan and Washington. The Authority had acquired two parcels of land in Manalapan, one pursuant to a comdennation proceeding[1] and one by purchase, in order to build an extension from the New Brunswick interchange to Toms River. It also had acquired tracts of land

---

[1] After the proceedings were commenced the Authority and McCaffrey, the owner, agreed on a compensation award and payment thereof has been made.

in Washington, two pursuant to condemnation proceedings[2] and one by purchase, in order to build an interchange between the New Jersey Turnpike and Interstate 195. The judges of the Division of Tax Appeals determined that the lands so acquired by the Authority were subject to roll-back taxes under the Farmland Assessment Act of 1964, *N. J. S. A.* 54:4–23.1 *et seq.* The Authority appeals.

The Farmland Assessment Act of 1964 (the act) was constitutionally authorized, *N. J. Const.* (1947), Art. VIII, § I, ¶ 1, as amended in 1963, to further the following objectives:

(a) the desirability of continuing the family farm in New Jersey and the farmer's problem; (b) the interests of the municipalities and the problems of the assessors; and, finally, (c) the interests of all the people of New Jersey in maintaining "open" space, the beauty of our countryside and in the availability of agricultural products fresh from the farm.

*Report of the Governor's Farm Land Assessment Committee* (March 20, 1963). See also, *Senate Committee on Revision and Amendment of Laws, Public Hearing on Senate Concurrent Resolution No. 16,* at 2 and 7, (April 15, 1963). To meet these objectives, generally the act authorizes the tax assessment of land actively devoted to agricultural or horticultural use at its value for those purposes alone, *N. J. S. A.* 54:4–23.2; 54:4–23.7. This assessed value is often less than that which the land would have if it were put to another use. See *Terhune v. Franklin Tp.,* 107 *N. J. Super.* 218 (App. Div. 1969); *East Orange v. Livingston Tp.,* 102 *N. J. Super.* 512 (Law Div. 1968), aff'd o. b. 54 *N. J.* 96 (1969).

When land which has been taxed under the act in previous years is applied to a use other than agricultural or horti-

---

[2] As to one of these parcels, owned by Vahlco Corporation, a settlement of the amount to be paid was reached between the owner and the Authority following the commissioners' award, and payment has been made. The other, owned by Harrentown Woods, Inc., is the subject of a condemnation action in the Superior Court on appeal from the commissioners' award.

cultural, it becomes subject to roll-back taxes. Generally, roll-back taxes are additional taxes "in an amount equal to the difference, if any, between the taxes paid or payable on the basis" of the special farmland assessment and "the taxes that would have been paid or payable had the land been * * * assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was * * * assessed and taxed" as farmland.[3] *N. J. S. A.* 54:4-23.8.

■ The Authority contends that it should not be subject to these roll-back taxes because of *N. J. S. A.* 27:23-12, which specifically grants it a tax exemption for "any turnpike project or any property acquired or used by the Authority under the provisions of * * * [the Turnpike Authority] act * * *." The Authority's argument, however, is misplaced. In future years it will have an exemption from taxes on the land in question, provided the requirements of *N. J. S. A.* 27:23-12 are met. See *New Jersey Turnpike Auth. v. Washington Tp.*, 16 *N. J.* 38 (1954). Roll-back taxes involve a special situation to which that exemption statute does not apply. In the Farmland Assessment Act the Legislature has accorded a tax benefit to those using land for agricultural or horticultural purposes but requires some repayment when the use of the land is changed, irrespective of the nature of the new use — *e. g.*, highways — or the status of the person owning the land at the time of change in use.

Our determination that the lands here involved are subject to roll-back taxes is buttressed by the fact that prior to 1970 the act provided:

The taking of land which is being valued, assessed and taxed under this act by right of eminent domain shall not subject the land so taken to the roll-back taxes herein imposed. [*L.* 1964, *c.* 48, § 17]

This provision was expressly repealed in 1970. *L.* 1970, *c.*

---

[3]As used herein "farmland" includes land devoted to agricultural or horticultural use.

243, § 3. There is no legislative history dealing with this repeal of the provision expressly exempting from roll-back taxes land taken by the right of eminent domain. Nevertheless, it is apparent that such repeal bespeaks a deliberate legislative intent that lands taken by right of eminent domain no longer be so exempt, as well as a possible awareness of constitutional reasons precluding any such exemption.[4]

Other statutory provisions and the usual incidents of a condemnation proceeding or other acquisition by a public agency are also implicated in the proper interpretation of the act here involved.[5]

We need not determine who is actually liable for the payment of these taxes — that is, the prior owners or the Authority, as between themselves. The owners are not parties to this proceeding. We note that the procedure to be used in assessing and collecting roll-back taxes is that outlined in *N. J. S. A.* 54:4–63.12 *et seq.,* "Assessment of Omitted Property." *N. J. S. A.* 54:4–23.9.

---

[4]We note but need not decide the issues of whether *L.* 1964, *c.* 48, § 17 was constitutional and whether the Legislature constitutionally could grant an exemption from roll-back taxes where the land is no longer devoted to agricultural or horticultural use. *N. J. Const.* (1947), Art. VIII, § 1, ¶ 1(b), uses mandatory language concerning the imposition of roll-back taxes on lands which have been taxed under farmland assessment legislation. See *Ridgefield Park v. Bergen Cty. Bd. of Taxation*, 62 *N. J. Super.* 133 (Law Div. 1960). On its face the constitutional provision allows for no exceptions to that mandate.

[5]The condemnation proceedings relating to the lands here involved were instituted pursuant to the Turnpike Authority Act, *N. J. S. A.* 27:23–5(j), but that provision in turn refers to the ascertainment and payment of just compensation in accordance with chapter 1 of *Title* 20 of the *Revised Statutes, N. J. S. A.* 20:1–1 *et seq.* Although the condemnation complaint, filed after the 1971 act, involving the McCaffreys' land in Manalapan does not so state, we will assume that the Authority intended to refer therein to *N. J. S. A.* 20:3–1 *et seq.* rather than chapter 1 of *Title* 20. In any event, the normal incidents of a condemnation proceeding which we shall discuss apply, irrespective of which statutory provisions are applicable.

■ The Authority, in support of its claim of exemption, relies on provisions of the condemnation statutes. Thus, it says that where there is a condemnation action involving a declaration of taking and payment of moneys into court, as provided in the Turnpike Authority Act, *N. J. S. A.* 27:23–5(j), the Authority generally has the immediate right to possession and use of the land and, in proceedings under the Eminent Domain Act of 1971, the title thereto, free of all liens. Any such lien attaches to the ultimate condemnation award. See *N. J. S. A.* 20:3–19; 20:3–20; 20:3–21(a); 27:23–5(j). Thus, usually, once the condemnation proceeding is completed and the award made, the title acquired by the Authority generally is free and clear of all liens, including tax liens, the latter attaching to the proceeds of the condemnation award, from which it is payable.

■ We find no necessary inconsistency between these incidents of a condemnation proceeding and the conclusion that the Authority is not exempt from roll-back taxes as to land it thus acquires. The Legislature has made it plain that such land is subject to these taxes. We need not go any further. Specifically, we need not decide whether, after the land is so acquired, such taxes are a lien against the land or must be satisfied from the condemnation award; nor, as indicated, need we express any view as to who, as between the owner and the Authority (either as condemnor or voluntary purchaser), must pay such taxes. Those issues must be determined in a proceeding in which all interested persons are parties.[6]

---

[6]See *East Orange v. Palmer*, 47 *N. J.* 307, 323–324, 330 (1966); *State v. New Jersey Zinc Co.*, 40 *N. J.* 560, 573–574 (1963); *Wayne Tp. v. Kosoff*, 136 *N. J. Super.* 53 (App. Div. 1975); *State v. Market Associates*, 134 *N. J. Super.* 282 (App. Div. 1975); *Paterson Redev. Agency v. Bienstock*, 123 *N. J. Super.* 457, 459–460 (App. Div. 1973); *State by the Commissioner of Transportation v. South Hackensack Tp.*, 111 *N. J. Super.* 534, 543–544 (App. Div. 1970), certif. den. 57 *N. J.* 433 (1971); *Port of N. Y. Auth. v. Howell*, 68 *N. J. Super.* 559, 570 (App. Div. 1961), certif. den. 36 *N. J.* 144 (1961);

The construction we have placed on the roll-back provisions of the act harmonizes them with the Authority's specific exemption from taxation authorized by *N. J. S. A.* 27:23–12, and, subject to appropriate later determinations in the other proceedings we have mentioned, does no violence to the normal incidents of a condemnation proceeding and award established by statute. See n. 6, *supra.* It permits each enactment fully to effectuate its respective goal. The Authority is exempt from taxation on land acquired and used by it, but to the extent that such land has been devoted to agricultural or horticultural use, the land is subject to roll-back taxes. Our interpretation of the act also gives effect to what we consider a purposeful legislative alteration in its substance when in 1970 it repealed the exemption from such taxes of land taken by eminent domain. See *State v. Green,* 62 *N. J.* 547, 554 (1973); *Handleman v. Marwen Stores Corp.,* 53 *N. J.* 404, 413 (1969); *Brewer v. Porch,* 53 *N. J.* 167 (1969); *Matawan v. Monmouth Cty. Bd. of Taxation,* 51 *N. J.* 291 (1968).

The authority contends that at least part of the taxes imposed in favor of the municipalities was [1] erroneously assessed. Manalapan obtained an assessment for the years 1972, 1973 and 1974 as to the property acquired after institution of condemnation proceedings. The Authority filed a declaration of taking with respect thereto in 1973. Washington obtained an assessment for the years 1970, 1971 and 1972 as to the property acquired after commencement of condemnation proceedings. The Authority filed a declaration of taking with respect thereto in 1971. It argues that, as to both parcels, it immediately acquired the right to possession of the land upon filing the declaration of taking.

---

*Milmar Estate v. Fort Lee,* 36 *N. J. Super.* 241 (App. Div. 1955). See also, *N. J. Turnpike Auth. v. Saybolt & Co., Inc.,* 51 *N. J.* 377 (1968); *Housing Authority of Hoboken v. Segal,* 112 *N. J. Super.* 359 (App. Div. 1970); *N. J. Highway Auth. v. Henry A. Raemsch Coal Co.,* 40 *N. J. Super.* 355 (Law Div. 1956); *N. J. S. A.* 20:3–23; *N. J. S. A.* 54:5–6.

Thus, it is contended, the roll-back taxes should have been imposed in the year that the declaration of taking was filed — in Manalapan, 1973 instead of 1974; in Washington, 1971 instead of 1972. We find no substance to this claim.

▮ The filing of a declaration of taking does give the Authority a right to immediate possession of the land in question, *N. J. S. A.* 27:23–5(j). Compare *N. J. S. A.* 20:3–19. However, under the Farmland Assessment Act the roll-back taxes are assessed in the year of change in use, rather than possession or even title. *N. J. S. A.* 54:4–23.8. See also, *N. J. Const.* (1947), Art. VIII, § I, ¶ 1(b).

The usual rule for the commencement of a tax exemption on property is that set forth in *N. J. S. A.* 54:4–3.3b — *i. e.,* the exemption begins on January 1 of the year following that of acquisition. See *East Orange v. Palmer, supra.* However, the roll-back tax provisions are different from the normal real property tax statute in this respect. The language and purpose of the provisions are clear. It is not a mere change in ownership or possession that triggers the imposition of roll-back taxes; it is a change in the use to which the property is applied. There is nothing in the record before us to indicate that the change in use of either parcel did not occur in the year in which the roll-back assessments were imposed. The assessments in each of those years were thus proper.

The Authority also contends that since the municipalities were made parties and given notice in the respective condemnation proceedings, their failure to appear therein should estop them from later asserting a claim for roll-back taxes as to the lands involved therein.

▮ While it is desirable that all persons, including a municipality with a tax claim, having an interest in the land be parties to the condemnation proceedings, the size of the fund established generally is based on the fair market value of the land and not the number or extent of the liens on it. We need not determine whether such a municipality actively could participate in those proceedings (see n. 6,

*supra*), for in any event, under the circumstances before us, we cannot fault these townships for failing to assert their roll-back tax claims in the condemnation litigation.

Since it is the county board of taxation that assesses the the roll-back taxes as omitted assessments on the complaint of the municipality, *N. J. S. A.* 54:4–63.12 to 63.15, it might well be that during the pendency of the condemnation proceedings the municipality might not have a claim to assert. Moreover, at the time of commencement of such proceedings the Authority should have been aware of the possibility that roll-back taxes would be imposed. It could readily have had a municipal tax search made which would have revealed "whether the land is being assessed or has been assessed within the 3 years last past under the Farmland Assessment Act of 1964 * * * and may be subject to roll-back taxes thereunder." *N. J. S. A.* 54:5–13.

Thus, even assuming that it would have been appropriate for the municipalities to have asserted their roll-back tax claims in the condemnation proceedings, their failure to do so cannot be said to have prejudiced the Authority. Any prejudice suffered by the Authority or any difficulty that it may face with respect to recovering any part or all of the roll-back taxes from the prior owners is not attributable to any lapse or failure to act on the part of the municipalities. There is no basis for an estoppel against them. See *West Jersey Title, etc., Co. v. Industrial Trust Co.,* 27 *N. J.* 144 (1958); *Andersen v. Well-Built Homes of Central Jersey, Inc.,* 69 *N. J. Super.* 246, 255 (App. Div. 1961).

In any event, we find the application of principles of estoppel particularly inappropriate where the collection of taxes by a public body is involved, except in unusual circumstances. No such circumstance exists here. See *Princeton Univ. Press v. Princeton,* 35 *N. J.* 209, 214 (1961); *N. J. Turnpike Auth. v. Washington Tp.,* 16 *N. J.* 38, 44 (1954); *East Orange v. Livingston Tp., supra,* 102 *N. J. Super.* at 521–522. See also, *Vogt v. Belmar,* 14 *N. J.* 195 (1954).

The judgments are affirmed.