181 N.J. Super. 309 (1981)
437 A.2d 353
DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF,
v.
FRANKLIN TP., UNION TP., AND ALEXANDRIA TP., DEFENDANTS.
Superior Court of New Jersey, Tax Court of New Jersey.
Decided August 4, 1981.
*313 Paul H. Schneider and Alan B. Rothstein, for plaintiff (John J. Degnan, Atty. Gen. of New Jersey, attorneys).
Thomas J. Cafferty for defendant Township of Franklin (Seiffert, Frisch, McGimpsey & Cafferty, attorneys).
J. Peter Jost for defendant Township of Union.
John R. Lanza for defendant Township of Alexandria (Winget, Keating, Thatcher & Lanza, attorneys).
*314 ANDREW, J.T.C.
In these consolidated local property tax matters this court must decide whether rollback taxes under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., were properly assessed against property acquired by plaintiff State of New Jersey, Department of Environmental Protection ("Department"). The matters are before the court on motions and cross-motions for summary judgment.
The subject of these cases are 45 parcels of land located in Franklin Township, Somerset County, five parcels located in Alexandria Township, Hunterdon County, and one parcel located in Union Township, Hunterdon County. All parcels were assessed as farmland pursuant to the Farmland Assessment Act at the time they were acquired by Department. Immediately thereafter rollback taxes were assessed against each parcel by the respective townships. The assessments were appealed to the appropriate county tax boards, resulting in affirmances in each case. Appeals of the county board determinations were then filed, as to certain of the parcels, with the Division of Tax Appeals. Those appeals have been transferred to the Tax Court by operation of law. N.J.S.A. 2A:3A-26.
The Franklin Township properties were acquired by Department pursuant to N.J.S.A. 58:21B-1 et seq., for the ultimate construction of the Six-Mile Run Reservoir. Although 45 parcels were acquired, appeals from the county board judgments upholding the rollback assessments were taken to the Division of Tax Appeals only with regard to three parcels. These were Block 57, Lot 28, acquired November 8, 1971; Block 57, Lot 30, acquired January 24, 1972, and Block 74, Lot 14, acquired March 20, 1972.[1] Rollback taxes were assessed against Block 57, Lot 28, for 1970 and 1971, and against Block 57, Lot 30, and Block *315 74, Lot 14, for 1970, 1971 and 1972. The record is incomplete as to the dates of acquisition of the other Franklin Township parcels and the years for which the rollback was assessed.
The parties have stipulated that 13 of these parcels did not remain in agricultural or horticultural use, as defined in the Farmland Assessment Act, following their acquisition by Department. As to 31 of the parcels,[2] unresolved questions of fact exist as to their continued use as farmland and the nature and amount of income attributable to them. The three parcels for which appeals were filed are among those for which these factual questions remain. Department seeks to overturn the assessments placed on all 45 parcels.
The Alexandria and Union Township parcels were acquired with funds from the New Jersey Green Acres Bond Act of 1971, L. 1971, c. 165. As noted above, the parcels were assessed as farmland at the time of their acquisition by Department, and rollback assessments were made immediately thereafter. County board judgments were appealed to the Division of Tax Appeals with respect to three of the Alexandria Township parcels. These were Block 17A, Lot 1B, acquired September 10, 1975, and Block 17A, Lots 3 and 15, acquired August 16, 1976. Rollback taxes were assessed, as to Lot 1B, for 1974 and 1975, and as to Lots 3 and 15, for 1974, 1975 and 1976. The two parcels for which appeals were not filed, block 17A, Lots 3A and 14, were acquired July 3, 1975. The record does not indicate the years for which the rollback was assessed on these parcels. It has been stipulated that Lots 3A and 14 were not devoted to agricultural or horticultural purposes after their acquisition. Whether or not the other three lots, for which appeals were filed, were so devoted, remains unresolved.
The Union Township parcel, Block 11, Lot 10Q, was acquired August 20, 1975. It was assessed for rollback taxes for 1973, *316 1974 and 1975. The county board determination affirming the rollback was appealed to the Division of Tax Appeals. The parcel has not been farmed (meaning devoted to an agricultural or horticultural use) subsequent to its acquisition by Department.
Several arguments were offered by Department in support of its claim that rollback taxes should not have been assessed against any of the subject parcels in these circumstances. The primary contentions are that rollback taxes were not meant to apply to acquisitions by the Department of Environmental Protection for reservoir, recreation or open space conservation purposes, and that the payments in lieu of taxes provided for in the reservoir and Green Acres legislation were meant to be the sole obligation of the Department to the exclusion of rollback taxes. In the Franklin Township case it is also asserted that Department property acquired for public water supply purposes is statutorily exempt from taxation. See N.J.S.A. 54:4-3.3. The townships assert that the acquisition of these properties by Department for reservoir and Green Acres purposes constitutes a change in use of the land sufficient to trigger the rollback provisions of the Farmland Assessment Act. In addition, they maintain that imposition of the rollback is entirely consistent with the "in lieu" payment plans devised by the Legislature.
Preliminarily, the court is faced with a question of jurisdiction. Department did not file appeals to the Division of Tax Appeals as to 42 of the Franklin Township parcels and as to two of the Alexandria Township parcels. The deadline for such appeals which has long since passed, was December 1 following the rendering of the judgment by the county board or within three months from the time the county board judgment was rendered, whichever date was later. N.J.S.A. 54:4-63.23.
In the briefs submitted in the Franklin Township case it is "stipulated" that the action is to be treated as though appeals were filed as to all 45 parcels. Department's brief in the Alexandria Township case contains a request that the two *317 unappealed parcels be included in the action (the township's brief is silent on this point). None of the briefs, however, offer any authority that would support the assumption of jurisdiction by this court in the absence of a timely appeal.
The question of jurisdiction was touched upon briefly at oral argument.[3] Counsel for Department in the Franklin Township case explained that in an effort to avoid the necessity of a county board hearing as to each of the 45 parcels, a stipulation was entered before the Somerset County Board of Taxation that the board would be governed by the decision of the Division of Tax Appeals regarding the three parcels that were appealed. Counsel was of the opinion that such a stipulation established jurisdiction as to all the properties, including those for which an appeal to the Division was not filed.
I cannot agree that jurisdiction can be conferred on the court from the consent of the parties by way of a stipulation before the county board of taxation. These matters were transferred to the Tax Court from the Division of Tax Appeals. The timely filing of a petition of appeal with the Division was essential for that tribunal to have jurisdiction of the appeal. Prospect Hill Apts v. Flemington, 172 N.J. Super. 245, 247, 1 N.J. Tax 224, 226-27 (Tax Ct. 1979), and cases cited therein. The parties' attempt to avoid repetitious hearings before the county board was understandable. However, the proper procedure should have been for the county board to enter dismissals without prejudice as to the 42 parcels in order to permit expeditious appeals to the Division of Tax Appeals. The filing of an appeal *318 to the Division for each parcel, within the time prescribed by statute, had to be accomplished in order to create jurisdiction.
Counsel for Department in the Alexandria Township case contended at oral argument that the decision in Newark v. Essex Cty. Bd. of Tax., 110 N.J. Super. 93 (Law Div. 1970), overruled on other grounds, 72 N.J. 389, 405 (1977), stands for the proposition that when an issue is being actively litigated, whenever it has arisen, the court may consider all such cases even though appeals have not been filed. Without considering the accuracy of that statement, it is apparent that the procedural pattern presented in Newark, is different from that herein. That matter was before the court on a complaint in lieu of prerogative writs filed by the City of Newark on March 5, 1970 against the Essex County Board of Taxation and the 21 other municipalities of Essex County. It dealt with a claim by the City of Newark for the allowance of credits in 1970 for county taxes paid during 1960-1969 pursuant to N.J.S.A. 54:4-49. Following an appeal to the Essex County Tax Board, Newark sought relief in Superior Court rather than before the Division of Tax Appeals, which latter procedure was the normal course of appeal provided by N.J.S.A. 54:2-35. The court determined that, in view of the public interest involved and the fact that primarily legal questions were presented, an application of the doctrine of exhaustion of administrative remedies should be waived. The court relied upon R. 4:69-5, which provides:
Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 [actions in lieu of prerogative writs] shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.
This aspect of the decision in Newark is inapposite to the jurisdictional question posed here. The exhaustion rule does not come into play in this matter. There was no attempt made here to preserve an appeal by the filing of a complaint with some tribunal other than the Division of Tax Appeals. Here there was a complete failure to preserve appeals as to 42 of the parcels in Franklin Township and two of the parcels in Alexandria *319 Township. In Newark a complaint was filed, apparently within the prescribed time limit, see R. 4:69-6, in Superior Court. The decision of the Law Division to retain jurisdiction in that case despite the failure to exhaust administrative remedies does not support the assumption of jurisdiction by this court in the instant matter in the absence of any filing within the time limits set by law. Cf. Boys' Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 405 (1977); Bergen Cty. v. B. Paramus, 79 N.J. 302 (1979); New Jersey Turnpike Auth. v. Monroe Tp., 2 N.J. Tax 371 (Tax Ct. 1981).
I find, therefore, that this court does not have jurisdiction to entertain appeals by the Department of Environmental Protection with respect to 42 parcels of land in Franklin Township and two parcels in Alexandria Township for which appeals to the Division of Tax Appeals were never filed.
Remaining for decision are Department's appeals regarding three of the parcels in Franklin Township, three parcels in Alexandria Township, and the one Union Township parcel. There are no unresolved issues of material fact in the Union Township case. It is conceded that Block 11, Lot 10Q, in Union Township was not farmed subsequent to its acquisition by Department, and therefore was not "actively devoted" to agricultural or horticultural purposes as defined in the Farmland Assessment Act. That appeal is thus ripe for summary judgment. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954). However, issues of material fact remain regarding each of the three parcels in both Franklin Township and Alexandria Township. The parties have not been able to stipulate whether the requirements for farmland assessment as set forth in the farmland assessment legislation were satisfied in the years in which the rollback was assessed. Nevertheless, depending upon the outcome of certain legal issues to be discussed hereafter, resolution of these factual matters may be unnecessary. Only if the court disagrees with Department's contentions that it is entitled to judgment as a matter of law, and disagrees with the defendant townships' legal arguments, *320 must the factual issues be reached. If it is determined that either party is entitled to judgment as a matter of law, resolution of the factual matters will not be needed. The court will therefore proceed to the merits of each case. Judgment will be reserved on the Franklin and Alexandria Township cases if a factual hearing proves necessary.
Department's first contention is that the rollback provisions of the Farmland Assessment Act were not intended to apply to land acquisitions by the Department of Environmental Protection for public water supply purposes or for public recreation and conservation purposes. Conversely, the townships maintain that the very acquisition of these properties by Department for purposes other than the agricultural or horticultural uses delineated in the Farmland Assessment Act constitutes a change in use mandating imposition of rollback taxes.
Department relies heavily upon the history of the Farmland Assessment Act, which will be briefly reviewed here. The act has its genesis in the decision of our Supreme Court in Switz v. Kingsley, 37 N.J. 566 (1962). In 1960 the Legislature passed chapter 51 of the Laws of 1960, relating to the taxation of real and personal property for the use of local government. Section 23 of the act accorded preferential treatment to agricultural interests in the taxation of real property. That section provided:
In the assessment of acreage which is actively devoted to agricultural use, such value [taxable value] shall not be deemed to include prospective value for subdivisions or nonagricultural use.
The court determined that this provision was violative of Art. VIII, § 1, par. 1, of the New Jersey Constitution, which commands that all real property be assessed according to the same standard of value and at the same rate of tax of the taxing district in which the property is located. Switz v. Kingsley, supra at 585.
Following the Switz decision alternative means were sought by which to afford the New Jersey farmer some relief from local property taxation. The Governor's Farmland Assessment Committee *321 was appointed to make a study and develop recommendations regarding the assessment of farmland in the State. In a report dated March 20, 1963, it recommended an amendment to the Constitution "to require the Legislature to enact laws to provide that land actively devoted to agriculture or horticulture be assessed at values on this use only." Report of Governor's Farmland Assessment Committee (March 20, 1963). In the development of its recommendations the Committee considered
(a) the desirability of continuing the family farm in New Jersey and the farmer's problem; (b) the interests of the municipalities and the problems of the assessors; and, finally, (c) the interests of all the people of New Jersey in maintaining "open" space, the beauty of our countryside and in the availability of agricultural products fresh from the farm.
The Committee's recommendations were followed, and a constitutional amendment permitting the separate assessment of land actively devoted to agricultural or horticultural use was proposed in Senate Concurrent Resolution 16 (1963). The statement accompanying the proposal considered the amendment to be "essential to encourage the retention of agriculture as an industry in the state and to preserve agricultural lands in an open space condition." See East Orange v. Livingston Tp., 102 N.J. Super. 512, 534 (Law Div. 1968), aff'd o.b. 54 N.J. 96 (1969). The primary objective was "to save the `family farm' and to provide farmers with some economic relief by permitting farmlands to be taxed upon their value as on-going farms and not on any other basis." Ibid. The proposed amendment carried at the general election held November 5, 1963.
Chapter 48 of the Laws of 1964, N.J.S.A. 54:4-23.1 et seq., became the implementing legislation. The act is limited in its application to land that is actively devoted[4] to agricultural or horticultural use. Land is deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man. N.J.S.A. 54:4-23.3. Land is deemed to be in horticultural use when devoted to the production for sale of *322 fruits, vegetables, and nursery, floral, ornamental and greenhouse products. N.J.S.A. 54:4-23.4. In addition, land devoted to and meeting the requirements and qualifications for payments pursuant to a soil conservation program under an agreement with an agency of the Federal Government is deemed to be in agricultural or horticultural use. Id.; N.J.S.A. 54:4-23.3. These are the only qualifying uses indicated in the legislation for which assessment shall be at that value the land has for agricultural or horticultural use.
When land which is in agricultural or horticultural use and is being taxed under the act is applied to a use other than agriculture or horticulture it becomes subject to rollback taxes. Generally, rollback taxes are additional taxes in an amount equal to the difference, if any, between the taxes as assessed under the act and the taxes that would have been assessed had the land been taxed as other land in the taxing district, for the year of the change in use and such of the two prior tax years in which the land was taxed as farmland. N.J.S.A. 54:4-23.8. Provision for rollback taxes had been recommended by the Governor's Committee in order to "give protection to the municipality against pure speculation...." See Paz v. DeSimone, 139 N.J. Super. 102, 106-107 (Ch.Div. 1976).
Department asserts that the rollback should not apply in the instant circumstances because the uses for which these lands were acquired are not inconsistent with the uses to which the Farmland Assessment Act is directed. The legislation authorizing land acquisitions for the Six-Mile Run Reservoir, N.J.S.A. 58:21B-1 et seq., pursuant to which the Franklin Township parcels were acquired, defines "water supply facilities" to include real property acquired for the purpose of augmenting the natural water resources of the State, and preserving and protecting these resources and providing for the conservation and development of future water supply resources. N.J.S.A. 58:21B-2(b). Real property acquired pursuant to this legislation
... shall be held primarily for use in connection with a water supply system, but shall also be made available, as a State reservation, for recreational and other State uses consistent with its primary use.... [N.J.S.A. 58:21B-5]
*323 The Green Acres legislation, consisting of the New Jersey Green Acres Bond Act of 1971, L. 1971, c. 165, and the New Jersey Green Acres Land Acquisition Act of 1971, N.J.S.A. 13:8A-19 et seq., pursuant to which the Alexandria Township and Union Township parcels were acquired, authorizes the acquisition of lands for public recreation and the conservation of natural resources. L. 1971, c. 165, § 2; N.J.S.A. 13:8A-20(a). "Recreation and conservation purposes" is defined as
... use of lands for parks, natural, and historic areas, forests, camping, fishing, water reserve, wildlife, hunting, boating, recreation centers, winter sports and similar uses for public recreation and conservation of natural resources. [L. 1971, c. 165, § 4(a); N.J.S.A. 13:8A-21(c)]
Department maintains that the uses to which these lands must be devoted, pursuant to the respective statutes, are consistent with the "interests of all the people of New Jersey in maintaining `open space' and the beauty of our countryside....," Report of Governor's Farmland Assessment Committee, supra, and thus consistent with the uses for which farmland assessment was intended. The rollback tax, the argument continues, was intended only for a change in use from a qualifying to a nonqualifying purpose. In these cases the properties were all devoted to open space, conservation-type uses at the time of the rollback assessment and thereafter. Furthermore, Department points out that the primary concern behind the rollback tax, to discourage private speculation and enrichment from the conversion of farmland to commercial, industrial or residential use, is not a factor here. These properties were not sold in order to capitalize on rising real estate values, or to develop the land commercially or residentially. Imposition of the rollback in this situation, Department claims, will not serve to discourage the speculation contemplated by the Legislature.
At the outset it must be recognized that exemptions from the rollback tax, as with all forms of tax exemption, are not favored by the law. Tax exemptions represent a departure from the fundamental principle that all property shall bear its just and equal share of the public burden of taxation. Princeton *324 Univ. Press v. Princeton, 35 N.J. 209, 214 (1961); Julius Roehrs Co. v. Tax Appeals Div., 16 N.J. 493, 497 (1954). They are to be construed strictly, with all doubts being resolved against the claimant. Id. at 497-498, 35 N.J. at 214. In addition, taxation of farm property at favorable rates as provided in the Farmland Assessment Act, being in the nature of an exemption from taxation in that it favors certain taxpayers at the expense of the remaining taxpayers in the taxing district, should also be construed to exist only when such a legislative intention is clear and unmistakable. GreenPond Corp. v. Rockaway Tp., 2 N.J. Tax 273, 289 (Tax Ct. 1981); Califon v. Stonegate Properties, Inc., 2 N.J. Tax 153, 163 (Tax Ct. 1981). Exemptions in favor of governmental agencies, however, are normally construed more liberally than those pertaining to nongovernmental owners. Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 440 (1962).
With these considerations in mind, attention should first be directed to the constitutional provision directing the enactment of farmland assessment legislation. N.J.Const. (1947), Art. VIII, § 1, par. 1, provides in part that
Any such laws shall provide that when land which has been valued in this manner for local tax purposes is applied to a use other than for agriculture or horticulture it shall be subject to [the rollback tax.]
On its face this language allows for no exemptions from imposition of the rollback once land which has been assessed as farmland undergoes a change in use. See New Jersey Turnpike Auth. v. Washington Tp., 137 N.J. Super. 543, 548, n. 4 (App.Div. 1975), aff'd o.b., 73 N.J. 180 (1977).
The implementing legislation is faithful to the constitutional directive. N.J.S.A. 54:4-23.8, the rollback provision, as written applies to all cases, without exception, in which a change to a use other than agriculture or horticulture has occurred. The legislation is also clear in its definition of qualifying uses. Only land devoted to the production for sale of plants, animals, fruits, vegetables and nursery products, or land devoted to a soil conservation program, is entitled to farmland assessment. Although the preservation of open space areas in the State was *325 one of the considerations leading to the enactment of the Farmland Assessment Act, this fact cannot, in the face of clear statutory language limiting coverage to agricultural and horticultural uses, justify expansion of the legislation to bring open space conservation, recreation, or any other uses within its reach. When the wording of a statute is clear and explicit, a court is not permitted to indulge in any interpretation other than that called for by the express words set forth. Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955).
The Report of the Governor's Farmland Assessment Committee supports this conclusion. Among the Committee's recommendations was the following:
That the Governor and the Administration seriously consider undertaking a broader and more comprehensive study of the problems of maintaining "open" or "breathing" space in New Jersey. This Committee, aware of the exigency of time and the compass of its existence, recognizes that assessment is an important but not the only factor warranting study. The use of zoning, of easements and other techniques should be looked at in the context of not only farm land, but of forest lands, water sheds and recreational areas.
The Report indicates that farmland was the only subject of the Committee's study, and further, it recognized a distinction between farmland and other types of uses of real property, such as watersheds, forests and recreational areas. See East Orange v. Livingston Tp., supra 102 N.J. Super. at 533. The tangential benefits of the legislation, including the preservation of open spaces, must be seen in proper focus, namely, as incidental to its primary purpose of providing the New Jersey farmer with some economic relief. Id. at 534.
Department's argument that the rollback should not apply to reservoir, open space conservation and recreation uses must rest on the underlying premise that those uses would qualify in the first instance for farmland assessment. Neither the legislation nor its history support such a premise. The Farmland Assessment Act was intended to afford property tax relief to land dedicated only to those agricultural and horticultural purposes set forth in the statute. Moreover, when land is devoted to multiple uses, agriculture or horticulture must be the *326 dominant use in order for the tract to qualify for farmland assessment. East Orange v. Livingston Tp., supra at 537; Urban Farms, Inc. v. Wayne Tp., 159 N.J. Super. 61, 66-67 (App. Div. 1978).
In New Jersey Turnpike Auth. v. Washington Tp., supra, and State v. Washington Tp., 73 N.J. 182 (1977), rollback assessments were affirmed against land acquired by the New Jersey Turnpike Authority and the New Jersey State Department of Transportation, respectively. The Turnpike Authority case involved land acquired by the Authority to build extensions to the Turnpike. The court held that the rollback applied to the property notwithstanding the existence of a statutory exemption from taxation for property acquired or used by the Authority under the provisions of the Turnpike Authority Act. See N.J.S.A. 27:23-12. The court noted that tax exemptions normally commence on January 1 of the year following acquisition of the property, N.J.S.A. 54:4-3.3b, whereas the rollback is triggered by and takes effect with the year in which a change in use occurs. Reliance was placed in part on the fact that prior to 1970 the Farmland Assessment Act provided that
The taking of land which is being valued, assessed and taxed under this act by right of eminent domain shall not subject the land so taken to the roll-back taxes herein imposed. [L. 1964, c. 48, § 17]
This provision was expressly repealed in 1970. L. 1970, c. 243, § 3. The court stated that the repeal "bespeaks a deliberate legislative intent that lands taken by right of eminent domain no longer be so exempt...." 137 N.J. Super. at 548.
In State v. Washington Tp., supra, the court affirmed the rollback assessments for the reasons stated by the Appellate Division in the Turnpike Authority case. The court saw no material difference in the fact that the acquiring agency was a department of state government rather than the Turnpike Authority.
Department seeks to distinguish these cases on the fact that they involved a change in use from farmland to highway purposes, a use not consistent with the purposes of the Farmland *327 Assessment Act. In the present cases the uses to which the subject parcels were devoted after acquisition by Department, it is argued, were consistent with the purposes of the farmland legislation. As noted above, however, mere consistency with the uses expressly denominated in the legislation for farmland treatment is not enough to avoid the operation of the rollback. The Turnpike Authority court described the rollback this way:
In the Farmland Assessment Act the Legislation has accorded a tax benefit to those using land for agricultural or horticultural purposes but requires some repayment when the use of the land is changed, irrespective of the nature of the new use  e.g., highways  or the status of the person owning the land at the time of change in use. [137 N.J. Super. at 547; emphasis supplied]
The court's decision did not turn on the fact that the use of the property changed from agriculture or horticulture to some other use inconsistent with agriculture or horticulture. No consideration was given to the degree of consistency of the new use with the previous qualifying use. Rather, the court stated that the nature of the new use was immaterial, other than for the fact that it was neither agricultural nor horticultural as defined in the act. All the court was concerned with was this: Was this property devoted to some use  any use  other than agriculture or horticulture in the year in which rollback taxes were assessed? If so, the assessment was proper.
Department offers additional support, as far as the Alexandria and Union Township cases are concerned, for its contention that rollback taxes were not meant to apply in these circumstances. The subject parcels in these townships were acquired pursuant to the New Jersey Green Acres Land Acquisition Act of 1971. Subsequent Green Acres legislation was enacted in 1974 and 1978. In 1974 the Legislature passed the New Jersey Green Acres and Recreation Opportunities Bond Act of 1974, L. 1974, c. 102 (see, also, the New Jersey Green Acres Land Acquisition and Recreation Opportunities Act, N.J.S.A. 13:8A-35 et seq.), and in 1978 the New Jersey Green Acres Bond Act of 1978, L. 1978, c. 118, was adopted. Both of these pieces of legislation contemplated the situation involved here. Section 5 of both acts provided in part:

*328 In the event that land acquired by the State pursuant to this act had been assessed at an agricultural and horticultural use valuation in accordance with provisions of the "Farmland Assessment Act of 1964," P.L. 1964, c. 48 (C.54:4-23.1 et seq.), at the time of its acquisition by the State, no rollback tax pursuant to section 8 of P.L. 1964, c. 48 (C.54:5-23-8) shall be imposed as to such land nor shall such rollback tax be applicable in determining the annual payments [in lieu of taxes] to be made by the State to the municipality in which such land is located.[5]
Department maintains that this legislation may be used as an aid in construction of the 1971 Green Acres act, and that it indicates an intent to exempt from rollback taxes any land acquired pursuant to that act that would otherwise be subject to the tax. Department cites Boyd v. Marini, 132 N.J. Super. 324 (App.Div. 1975), and Edwards v. Monachie, 3 N.J. 17 (1949), for the proposition that the subsequent legislation should serve as a convincing extrinsic aid to an interpretation of the earlier law.[6] In pertinent part Boyd involved the question of whether a statutory amendment increasing the maximum payments from the Unsatisfied Claim and Judgment Fund applied to a judgment entered after the amendment even though the accident producing the judgment occurred prior to the amendment date. A question of interpretation arose because the Legislature failed to include a cut-off date in the amendment as it had done in prior enactments. The court resolved the question of whether the omission was intentional or inadvertent by referring to a subsequent enactment that expressly stated the legislative intent *329 in the earlier law. The court relied in part on the following excerpt from 2A Sutherland on Statutory Construction (4 ed.) § 49.11 at 265:
Where ... a doubtful meaning of a former statute [is] rendered certain by subsequent legislation a number of courts have held that such ... subsequent legislation is strong evidence of what the legislature intended by the first statute. [132 N.J. Super. at 328].
The court noted that such an extrinsic aid is not controlling, and that "the circumstances of a given case may impose the serious consideration of other extrinsic aids, or indeed commend the rejection of consideration of the subsequent legislation." Ibid. Reliance on the subsequent legislation in that case was supported by the fact that the result achieved was consistent with prior judicial decisions.
It is apparent from the Boyd case and the authorities cited therein that reference to subsequent legislative enactments as an aid to interpretation of a statute should be resorted to in the first instance only when the statute is unclear. Where a statute is clear and unambiguous on its face any resort to legislative intent is unwarranted. See In re Jamesburg High School Closing, 83 N.J. 540, 547-548 (1980). A court is not at liberty to presume that the Legislature intended something other than what it expressed by its plain language. Id. at 548.
The statutes involved here, the New Jersey Green Acres Bond Act of 1971 and the New Jersey Green Acres Land Acquisition Act of 1971, contain no ambiguity with regard to the treatment of property acquired under the acts that had previously been assessed as farmland. There is no reference made to the rollback tax, nor is there anything in the acts to indicate any ambiguity on the subject. Section 5 of the Bond Act provides for payments to the municipality in lieu of real estate taxes. No other mention is made of the subject of assessment or anything connected with it. In the absence of any ambiguity, real property assessment must be controlled by the act as written and the body of New Jersey statutory and case law in existence at the time. Resort cannot be had to a subsequent enactment in order to achieve a contrary result.
*330 I find this result particularly appropriate in light of two provisions of the Land Acquisition Act. N.J.S.A. 13:8A-23 contains guidelines for the Commissioner of Environmental Protection in acquiring lands under the act. Subsection (e) provides:
Acquisition of lands actively devoted to agriculture shall be avoided whenever possible and in lieu thereof, whenever feasible, development rights, conservation easements and other interests less than a fee simple shall be acquired.
The same language is found among the legislative findings set forth in N.J.S.A. 13:8A-20.
Evidently, the Legislature was aware of the possibility that land acquired for Green Acres purposes might be an agricultural use. Moreover, use of the phrase "actively devoted" to agriculture indicates a further awareness that such lands might be valued and assessed as provided in the Farmland Assessment Act. In such circumstances the Legislature must be presumed to have been aware of the rollback provisions of the Farmland Assessment Act as well, yet there is nothing in the Green Acres legislation to indicate that Green Acres land should be treated any differently than other lands as far as the rollback tax is concerned.
I find, therefore, that the Green Acres legislation of 1974 and 1978 does not alter the result otherwise required, that the uses to which these parcels of land are to be put, as directed by the authorizing legislation, do not of themselves exempt the property from rollback taxes. The clear language of the State Constitution and the Farmland Assessment Act directs the imposition of rollback taxes in all cases in which a change to a use other than agriculture or horticulture has occurred. It has not been demonstrated that the rollback should not apply to land which has undergone a change to a use that is merely consistent with the qualifying uses expressly set forth in the statute.
I am also unpersuaded by defendants' counter-argument that the rollback should take effect, as a matter of law, immediately upon acquisition of these properties by Department. Defendants point to the legislation authorizing these acquisitions, and *331 the purposes for which the land must be held, as directed by statute. The Franklin Township parcels, acquired for construction of the Six-Mile Run Reservoir, are to be held "primarily for use in connection with a water supply system, but shall also be made available, as a state reservation, for recreational and other state uses consistent with its primary use...." N.J.S.A. 58:21B-5. The Alexandria and Union Township parcels were acquired for public outdoor recreation and conservation of natural resources. L. 1971, c. 165, § 4(a); N.J.S.A. 13:8A-21(c). Concededly, none of these uses qualify as an agricultural or horticultural use as defined in the Farmland Assessment Act. By that very fact defendants assert that these lands, which must be held for purposes other than those eligible for farmland assessment, are subject to rollback taxes regardless of the actual use to which they were devoted in the years in question.
The Farmland Assessment Act provides that when land which is being assessed as farmland under the act is applied to a use other than agriculture or horticulture it shall be subject to rollback taxes. N.J.S.A. 54:4-23.8. The verb "apply" denotes "to put to use esp. for some practical purpose," and "to put into operation or effect," Webster's New Collegiate Dictionary (1979 ed.), 55, indicating that an actual change in use is necessary to trigger operation of the rollback. This construction is evident in § 15 of the act, which provides:
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act. [N.J.S.A. 54:4-23.15].
See N.J.A.C. 18:15-7.2, -7.4; Paz v. DeSimone, supra, 139 N.J. Super. at 107-108.
In New Jersey Turnpike Auth. v. Washington Tp., supra, the Turnpike Authority contended that the rollback taxes should have been applied in the year in which the Authority filed declarations of taking for the subject parcels, giving it the right *332 to immediate possession, rather than in the year of actual change in use. The court disagreed, stating that "under the Farmland Assessment Act the roll-back taxes are assessed in the year of change in use, rather than possession or even title." 137 N.J. Super. at 551. The court continued:
The usual rule for the commencement of a tax exemption on property is that set forth in N.J.S.A. 54:4-3.3b  i.e., the exemption begins on January 1 of the year following that of acquisition. However, the roll-back tax provisions are different from the normal real property tax statute in this respect. The language and purpose of the provisions are clear. It is not a mere change in ownership or possession that triggers the imposition of roll-back taxes; it is a change in the use to which the property is applied. There is nothing in the record before us to indicate that the change in use of either parcel did not occur in the year in which the roll-back assessments were imposed. The assessments in each of those years were thus proper. [Ibid.; citations omitted]
Thus, when land which is being assessed as farmland is acquired for, and fully intended to be devoted to, other uses, it may still retain its farmland status as long as it continues to be farmed and meets the criteria set forth in the Farmland Assessment Act. The mere intent to devote the land to nonagricultural purposes does not invoke the rollback provisions of the act. Cf. Andover Tp. v. Kymer, 140 N.J. Super. 399 (App.Div. 1976) (holding land for eventual resale or speculation does not preclude assessment as farmland provided statutory criteria satisfied); Urban Farms, Inc. v. Wayne Tp., supra, (taxpayer's admitted intention to develop property for industrial and residential use cannot be considered in determining qualification for farmland assessment). Therefore the fact that the subject properties were acquired for nonagricultural purposes and will in all likelihood eventually be devoted to such purposes, cannot, absent any accompanying actual change in use, entitle defendants herein to judgment as a matter of law.
Defendant Franklin Township also asserts that Department's failure to submit timely farmland assessment applications for the year in which the rollback was assessed constitutes, as a matter of law, a change in use of the property. The filing of an application by August 1 of the pretax year is one of the prerequisites for farmland assessment. N.J.S.A. 54:4-23.6.
*333 For the same reasons noted above as to acquisition of these lands for ultimate nonagricultural use, the failure to have filed farmland assessment applications does not require imposition of rollback taxes. The rollback hinges upon change in use and not the filing of application forms. Moreover, the filing of an application goes to the issue of eligibility for farmland assessment. We are not here concerned with the qualification of the Franklin Township parcels for farmland assessment in 1971 and 1972, the years in which the rollback was assessed. This matter is not before the court on an appeal of a denial of farmland assessment for failure to file timely applications. This is Department's appeal of assessments of rollback taxes placed on the properties by the municipal assessor. On such an appeal the court is only concerned with whether a change in use occurred in the year of the assessment. An alleged change in use was the basis of the assessment, and an actual change in use must be demonstrated to justify the assessment regardless of whether farmland assessment applications were timely filed.
Department's second argument for judgment as a matter of law concerns the provisions for payments in lieu of taxes contained in the Reservoir legislation and the Green Acres legislation. The general rule regarding taxation of real property owned by the State or any state agency is that such property becomes exempt from taxation on January 1 of the year following the date of acquisition. N.J.S.A. 54:4-3.3b. The rule does not, however, relieve the State or state agency from the payment of taxes where such payment is required by the provisions of any law, nor does it prohibit payment of or agreements for the payment of fair and reasonable sums in lieu of taxes as provided by law. N.J.S.A. 54:4-3.3f.
Both the legislation authorizing land acquisitions for the Six-Mile Run Reservoir and the Green Acres legislation provide for payments in lieu of taxes to the municipalities in which property is acquired. The Reservoir legislation provides that "To the end that municipalities may not suffer loss of taxes by reason of the *334 acquisition and ownership by the State of New Jersey of property therein." The State shall pay annually on October 1 to each municipality
a. A sum equal to that last paid as taxes upon such land and improvements for the tax year immediately prior to its acquisition, which payments shall continue to be made annually until the year in which actual construction of water supply facilities on the property is undertaken, and thereafter;
b. Beginning with the year in which actual construction of water supply facilities is undertaken on the property, and annually thereafter, a sum equal to the amount last paid as taxes upon such land alone, and in addition;
c. Beginning with the year in which such actual construction of water supply facilities is undertaken and continuing for a period of 12 years, a sum equal to the following percentages of the amount last paid as taxes upon improvements upon such land: 92% in the first year, 84% in the second year, 76% in the third year, 68% in the fourth year, 60% in the fifth year, 52% in the sixth year, 44% in the seventh year, 36% in the eighth year, 28% in the ninth year, 20% in the tenth year, 12% in the eleventh year, and 4% in the twelfth year. [N.J.S.A. 58:21B-6]
The Green Acres legislation provides for similar percentage payments. L. 1971, c. 165, § 5. These percentages also apply to the total taxes last paid on land and improvements; however, the percentage payments begin in the first year at 100%, diminish to a 4% payment in the thirteenth year, and cease altogether thereafter. As can be seen, the payments on reservoir lands begin and remain at 100% until construction begins, and thereafter only the taxes on improvements diminish and eventually cease.
In both cases Department contends that the Legislature intended the in lieu payments to be the sole compensation to be paid to the municipality. Department maintains that had the Legislature intended that land acquisitions such as these be subject to rollback taxes as well as in lieu payments, it would have expressly so provided in the legislation. I find the opposite to be the case. The Legislature, which is charged with knowledge of its own enactments, Brewer v. Porch, 53 N.J. 167, 174 (1969), and, in the case of the Green Acres Act, even made reference to land in agricultural use, must be presumed to have been aware of the rollback provisions of the Farmland Assessment Act. If the intent was to exempt Department from the *335 rollback and limit its obligation to payments in lieu of taxes, that fact should have been expressly noted in the legislation.
Wall v. Hudson Cty. Park Comm'n, 80 N.J. Super. 372 (App. Div. 1963), certif. den. 41 N.J. 198 (1963), cited by Department, actually supports this result. In that case the court had to determine whether a statute granting tort immunity to counties extended to county park commissions as well. The court referred to prior legislation establishing counties and county park commissions as separate political bodies, and concluded that had the Legislature intended the word "county" in the statute to refer to both bodies, it would have clearly so stated. In the instant matter, had the Legislature, aware of the rollback provisions of the Farmland Assessment Act, intended an exemption therefrom for reservoir and Green Acres property, it would have expressly so provided. That, in fact, is exactly what was done in the 1974 and 1978 Green Acres Acts. Such an intent, however, cannot be inferred from the absence of any express indication of the legislative will. Without such an indication, the rollback provisions of the Farmland Assessment Act must operate in their normal course.
Furthermore, application of the rollback statute does not conflict with the in lieu payment plans. In New Jersey Turnpike Auth. v. Washington Tp., supra, the court reached a similar result in rejecting the Authority's claim that the existence of a specific statutory exemption for Turnpike property precluded imposition of rollback taxes. In future years, the court noted, the Authority would have an exemption from taxes, provided the requirements of the exemption statute were met. Rollback taxes, however, involve a special situation to which that exemption statute does not apply. See 137 N.J. Super. at 547. This construction placed on the rollback statute
... permits each enactment fully to effectuate its respective goal. The Authority is exempt from taxation on land acquired and used by it, but to the extent that such land has been devoted to agricultural or horticultural use, the land is subject to roll-back taxes. [Id. at 550]
*336 Although the Turnpike Authority in that case was not subject to payments in lieu of taxes, the court's analysis with regard to the exemption statute applies equally to the legislative plan for in lieu payments. The rollback and in lieu statutes address two different concerns and are not mutually exclusive. The in lieu payments begin on October 1 of the year of acquisition and continue thereafter as specified in the legislation. The rollback tax adjusts the amount of taxes due in the year of a change in use and such of the two prior years in which the land was assessed as farmland. There is no conflict between the two provisions. The taxpayer is required to pay additional taxes for the two previous years and the year of the change in use, and then commence annual in-lieu payments on October 1 based on the previous year's taxes. The municipality does not reap a windfall, as Department maintains. The municipality receives no more tax revenue than that which the Legislature directs should be paid in such circumstances. Department still receives substantial tax benefits. In the Green Acres cases its tax bill begins to diminish the year after acquisition and disappears completely at the end of 13 years. Thereafter the property is completely exempt from taxation. The reservoir lands receive benefits in the form of diminishing taxes due on improvements until they, too, finally cease. If Department feels that this result is harsh, its complaint lies with the Legislature. It is not the function of the court to legislate but rather to interpret statutes, and in so doing it must give effect to the language employed by the Legislature to properly effectuate the legislative design. Downing v. Stewart, 85 N.J. Super. 62, 67 (App.Div. 1964).
Department's contention that the Franklin Township parcels are exempt from taxation pursuant to N.J.S.A. 54:4-3.3 as property held for the purpose and protection of a public water supply does not change this result. Assuming, arguendo, that these parcels are so exempt, that fact has no bearing on a rollback assessment. New Jersey Turnpike Auth. v. Washington Tp. and State v. Washington Tp., both supra, establish that *337 property acquired by a state agency otherwise entitled to an exemption from taxation is not immune from the imposition of rollback taxes once a change in use has occurred.
Based on the foregoing, only the Union Township case can be fully resolved at this time. There are no unresolved issues of act in that case. The parties agree that farming activities ceased on the subject parcel following acquisition by Department. A change in use of the property thus took place.[7] That being so, it is incumbent upon Department to establish that despite the change in use, the rollback provisions of the Farmland Assessment Act do not apply. This has not been done. As a result, Department's motion for summary judgment must be denied. Defendant Union Township's motion for summary judgment is granted. Judgment will be entered by the Clerk of the Tax Court dismissing Department's complaint.
Issues of material fact remain unresolved in both the Franklin Township and Alexandria Township cases. As to the three parcels in each of those townships for which appeals were filed and for which this court has jurisdiction, it remains to be determined whether the qualifications for farmland assessment were satisfied in the years in which rollback taxes were assessed. Resolution of these matters rests on the outcome of that question. Neither Department nor the townships are entitled to judgment as a matter of law on any of the theories advanced. A factual hearing must be held as to whether a change to a nonagricultural use of the property occurred in the years in question. Department will prevail only if that question is eventually answered in the negative.
All motions for summary judgment in the Franklin and Alexandria Township cases are therefore denied. Fact hearings will *338 be scheduled on the issue of change in use in the years of the rollback assessments. Department's appeals regarding all parcels for which complaints were not filed are dismissed for lack of jurisdiction.
NOTES
[1] The record contains conflicting data as to whether Block 74, Lot 14, was acquired on March 20 or March 30 of 1972. This unresolved question has no bearing on the outcome of the case.
[2] One parcel is unaccounted for in the briefs of the parties as to its use as farmland following acquisition by Department.
[3] Oral argument was had before Tax Court Judge Conley, who later recused himself from these matters pursuant to R. 1:12-1(d). A newspaper article appearing in the Newark Sunday Star Ledger of February 15, 1981, which discussed the Franklin Township case, noted that Judge Conley had expressed his legal opinion on the matter in a 1971 memorandum while serving as a Deputy Attorney General. Upon reviewing that memorandum and refreshing his recollection of his prior involvement in the matter, Judge Conley determined that all the consolidated cases should be transferred to another judge for disposition.
[4] As defined in N.J.S.A. 54:4-23.5.
[5] I note, but need not decide, the issue of the constitutionality of such an exemption from rollback taxes. Cf. New Jersey Turnpike Auth. v. Washington Tp., supra, 137 N.J. Super. at 548, n. 4 (questioning constitutionality of repealed section of Farmland Assessment Act exempting from rollback taxes land taken by right of eminent domain).

It should also be noted that this provision applies only to land acquired pursuant to the 1974 and 1978 legislation. Thus, the 1974 act does not govern the subject properties in Alexandria and Union Township even though they were acquired in 1975 and 1976. Those parcels were acquired with funds from, and pursuant to the provisions of, the 1971 Green Acres legislation.
[6] Edwards offers no guidance beyond that present in Boyd on this rule of statutory construction.
[7] This is so even if the land lay completely unattended (the briefs are not clear as to what actual use the property was put in the year the rollback was assessed). The purposes of the Farmland Assessment Act would clearly be frustrated if a change from agricultural use to nonuse did not constitute a change in use, and the Legislature could not have intended such a result.