ANDREW, J.T.C.
This case involves the question of the proper computation of the payments to be made by defendant, Department of Environmental Protection (DEP), in lieu of taxes under N.J.S.A. 58:21B-6 to plaintiff, Franklin Township (Franklin). Franklin asserts that the statute setting forth the appropriate measure requires defendant to include rollback taxes in its calculations of payments in lieu of taxes for the tax year 1985. Defendant, of course, disputes that conclusion.
Pursuant to N.J.S.A. 58:21B-1, between the years 1971 and 1978, defendant acquired various parcels of land which were assessed as farmland under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., for the purpose of constructing a water supply facility designated as the “Six-Mile Run Reservoir.” Because, upon acquisition, the land was no longer used as farmland, the State paid rollback taxes pursuant to N.J.S.A. 54:4-23.8. Environmental Protection Dep’t v. Franklin Tp., 3 N.J. Tax 105, 130, 437 A.2d 353 (Tax Ct.1981), aff’d, 5 N.J. Tax 476 (App.Div.1983).
The parties have stipulated that DEP’s payments in lieu of taxes were based upon the preferential-farmland assessments at the respective times of acquisition of each parcel. The parties have also agreed upon the exact amounts due Franklin *561 in the event that in lieu payments are determined to include rollback taxes.[1]
In support of its claim that rollback taxes are includable, plaintiff relies upon N.J.S.A. 58:21B-6 which provides that, in lieu of taxes for land acquired for a project such as the “Six-Mile Run Reservoir,” New Jersey’s State Treasurer shall pay “[a] sum equal to that last paid as taxes upon such land and improvements for the tax year immediately prior to its acquisition.” Because the Legislature is presumed to be aware of the rollback provisions of the Farmland Assessment Act, plaintiff argues, the Legislature should have expressly excluded rollback assessments from the calculation of payments in lieu of taxes if that had been its intent. Indeed, plaintiff observes, in two subsequent acts, the New Jersey Green Acres and Recreation Opportunities Bond Act of 1974, L. 1974, c. 102 and the New Jersey Green Acres Bond Act of 1978, L. 1978, c. 118, the Legislature expressly exempted rollback taxes from the calculation of payments in lieu of taxes. Section 5 of each act provides:
In the event that land acquired by the State pursuant to this act had been assessed at an agricultural and horticultural use valuation in accordance with ... [the Farmland Assessment Act of 1964] ... at the time of its acquisition by the State, no roll-back tax ... [pursuant to N.J.S.A. 54:4-23.8] ... shall be imposed as to such land nor shall such rollback tax be applicable in determining the annual payments in lieu of taxes to be made by the State to the municipality in which such land is located. [Emphasis supplied]
Moreover, plaintiff argues, the reasoning behind including rollback taxes in the calculations of defendant’s payments parallels the reasoning used by the Tax Court in holding the State liable for rollback taxes. Environmental Protection Dep’t, supra, 5 N.J. Tax at 130, 437 A.2d 353. Just as the absence of an “express indication” did not in Environmental Protection Dep’t exempt the State from rollback taxes, ibid, the absence of an express indication in the present case does not permit defendant to exclude rollback taxes from its calculations of payments in lieu of taxes. Finally, plaintiff contends, because *562 rollback taxes adjust the amount of taxes due in each of the rollback years, id. at 131, 437 A.2d 353, they are properly includable in defendant’s calculations.
Defendant responds that, because the language of the statute is clear and unambiguous, the court should look no further than the language in the statute in excluding rollback taxes from defendant’s calculations. In re Jamesburg High School Closing, 83 N.J. 540, 416 A.2d 896 (1980); Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 389 A.2d 465 (1978); Gabin v. Skyline Cabana Club, 54 N.J. 550, 258 A.2d 6; Watt v. Franklin, 21 N.J. 274, 121 A.2d 499 (1956); Duke Power Co. v. Patten, 20 N.J. 42, 118 A.2d 529 (1955). According to defendant, by referring to sums “last paid as taxes ... for the tax year[s] immediately prior to ... acquisition,” N.J.S.A. 58:21B-6, the Legislature has clearly and unambiguously excluded rollback taxes from defendant’s calculations. This contention merely begs the question. The issue here is joined because the phrase used by the Legislature is not unambiguous when one considers rollback taxes.
The resolution of this case more appropriately turns on the nature of rollback taxes: are they “paid as taxes for” each of the three rollback years or are they paid as taxes for only the year in which there has been a change in use?[2] In other words, do rollback taxes constitute taxes on each of the rollback years, or are they taxes or. only the year of change in use, which in this case happens to be the year of acquisition. If the former, that part of rollback taxes attributable to the year prior to acquisition should constitute part of defendant’s calculations for payments in lieu of taxes. If the latter, rollback taxes are *563 not part of the sum last paid as taxes for the year prior to acquisition, and consequently, should not constitute part of defendant’s calculations.
According to N.J.S.A. 54:4-23.8 which provides for the imposition of rollback taxes:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
In a public hearing on the proposed constitutional amendment permitting preferential assessment for farmland, N.J. Const. (1947), Art. VIII, § 1, ¶ 1, Senator John A. Waddington, Chairman of the Governor’s Committee on Farmland Assessment, described the above-quoted rollback feature as “a tax deferral or recapture feature.”[3] Senate Committee on Revision and Amendment of Laws, Public Hearing on S.C.R. 16, “Taxation of Lands Used in Agriculture or Horticulture,” at 3 (April 15, 1963); emphasis supplied; see also John A. Waddington Letter to Governor Richard J. Hughes (March 20, 1963). Similarly, scholarly literature dealing with the subject of farmland assessment consistently refers to rollback taxes in New Jersey and other states as “deferred taxation.” Beattie and Ransom, Use Value Assessment: Its Causes, Its Characteristics, Its Effect, (Lincoln Institute of Land Policy, Land Policy Roundtable: Case Studies Series No. 302) at 6, 18 (participation in farmland assessment “defers part of tax obligation”); Gouldemans, Use-Value Farmland Assessments: Theory, Practice and Impact (1974) at 41-42 (uses “roll-back tax” synonymously with “recapture of deferred taxation”); Wagenseil, “Property Taxation of Agricultural and Open Space Land,” 8 Harv. J. on Legis. 158 *564 (1970-1971); Dunford, “A Survey of Property Tax Relief Programs for the Retention of Agricultural and Open Space Lands,” 15 Gonz.L.Rev. 675, 685, 694 (1980) and Keene, “Agricultural Land Preservation: Legal and Constitutional Issues,” 15 Gonz.L.Rev. 621 (1980).
Thus, both the legislative history of, and studies about, farmland assessment suggest that rollback taxes are a type of tax deferral. Preferential farmland assessment defers that part of the obligation equivalent to the difference between the amount of tax which would have been payable under regular assessment and the amount actually paid under preferential assessment. After the land has been used as farmland for two consecutive years beyond the initial year of deferral, and the rollback provision can no longer affect that initial year, the deferred tax for the initial year becomes irrevocably forgiven. If, however, within two years of the year of deferral, the land’s use changes from farmland to nonfarmland, then the rollback provision applies and the “forgiven” tax obligation “accrues” for that initial year. Centex Homes of N.J., Inc. v. Manalapan Tp., 4 N.J.Tax 599, 608 (Tax Ct.1982), certif. granted 94 N.J. 517, 468 A.2d 175 (1983), remanded to App.Div. 95 N.J. 218, 470 A.2d 433 (1983), app. dism. upon stipulation (May 24,1984) (taxes “forgiven” by preferential farmland assessment are subject to recapture by the rollback provision if the taxes “forgiven” are within two years prior to the change to nonfarmland use). The same analysis applies to each additional year receiving preferential assessment. Gouldemans, op. cit., supra at 20 (refers to the “accrued tax obligation” of the rollback tax); Haines, “The Farmland Assessment Amendment: Its Application and Administration,” New Jersey Municipalities (January 1965) at 8 (liability for rollback tax accrues only when there has been a change in use).
Because of the deferred nature of rollback taxes, it is clear that, although it accrues only at a later date (if it accrues), the obligation to pay rollback taxes arises from the tax deferral during the two years of preferential assessment prior to and including the year of change in use. This result is not surpris *565 ing. The word “deferral” suggests “delay” or “postponement.” Websters Ninth New Collegiate Dictionary (1984) at 338. If the rollback tax obligation arose from the year of change in use, there would have been neither postponement, delay nor deferral of any tax obligation, and that would be inconsistent with the nature of rollback taxes as tax deferral. The deferred nature of rollback taxes, moreover, comports with the decision of several states to charge interest on rollback taxes as if the rollback taxes were the same as delinquent taxes. Alaska Stat. § 29.53.035 (1972); N.C.Gen.Stat. § 105-277.4(c) (Supp.1977), and Wash.Rev.Code § 84.34.108, § 84.34.-070 (1979).
Consequently, the “sum last paid” for the tax year prior to acquisition, pursuant to N.J.S.A. 58:21B-6, includes part of the deferred or rollback tax which arose from preferential assessment.
There is additional support for this conclusion. As plaintiff argues, if the Legislature had intended to omit rollback taxes from defendant’s calculations of payments in lieu of taxes, it could have made an express exclusion to that effect. When the Legislature wanted to exclude rollback taxes from payments in lieu of taxes, it made an express provision to that effect in the 1974 and 1978 Green Acres Acts. As with the State’s liability to pay rollback taxes, if the Legislature had intended to exclude rollback taxes from in lieu payments in the present case, it would have done so expressly. See Environmental Protection Dep’t, supra, 3 N.J.Tax at 130, 437 A.2d 353 (holding that an intent to exempt the State from rollback taxes “cannot be inferred from the absence of any express indication of the legislative will [to the contrary].” Ibid.). In agreeing with plaintiff, this court presumes that the Legislature was fully aware of the rollback provisions of the Farmland Assessment Act. Id. at 125, 437 A.2d 353.
The inclusion of rollback taxes in defendant’s calculations of payments in lieu of taxes, moreover, results neither in a windfall for plaintiff nor in undue hardship for defendant. The *566 express purpose of payments in lieu of taxes is to ensure that municipalities do not “suffer the loss of taxes by reason of the acquisition and ownership [of land] by the State of New Jersey____” N.J.S.A. 58:21B-6. In the present case, the in lieu payments received by plaintiff do not exceed the tax payments that would have been due plaintiff in the event that the land were privately owned when it was converted to nonfarmland use. Given the change in use, the statute precludes the “acquisition and ownership by the state” from causing the municipality to “suffer the loss of taxes.”
Naturally, if the farmland had not been acquired by the State, it might have remained in farmland use for one or more years. In that event, plaintiff would have received as taxes a sum less than it will now receive in the form of in lieu payments based on rollback taxes. The difference, however, results from the change in use, and not from the change in ownership. See N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 551, 350 A.2d 69 (App.Div.1975) (change in use, and not change in ownership, triggers rollback taxes). Although the change in use may never have occurred without the change in ownership, the crucial consideration is simply whether there has been a change in use. And given the change in use, the fact that the State, and not a private purchaser, acquired and owns the land may not cause the municipality to suffer a loss of taxes.
Furthermore, the inclusion of rollback taxes in defendant’s calculations does not result in undue hardship for defendant. Defendant’s in lieu payments do not exceed those it would have made if the same land had not benefited from farmland assessment the year prior to acquisition. By operation of the rollback tax provision, N.J.S.A. 54:4-23.8, taxes based on preferential assessment for a given year, in addition to rollback taxes for the same year, equal the taxes that would have been owed for that year under regular assessment. In other words, whether land acquired by defendant has been used as farmland or not, defendant’s payments in lieu of taxes will remain virtually constant.
*567 The exclusion of rollback taxes from defendant’s calculations, on the other hand, would give defendant a windfall. In that event, even though the land no longer met the requirements for farmland assessment, defendant would benefit (at the expense of the municipality) from the preferential assessment the land received before acquisition by the State.
Finally, a primary objective of the Farmland Assessment Act is to encourage the preservation of farmland by providing for the preferential assessment of land used as farmland. Other significant objectives are to save and preserve New Jersey’s open space and beautiful countryside. Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 67, 386 A.2d 1357 (App.Div. 1978); East Orange v. Livingston Tp., supra 102 N.J.Super. 512, 532-534, 246 A.2d 178 (Law Div.1968), aff’d o.b. per curiam 54 N.J. 96, 253 A.2d 546 (1969); Andover Tp. v. Kymer, 140 N.J.Super. 399, 404, 356 A.2d 418 (App.Div.1976); N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 546, 350 A.2d 69 (App.Div.1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977). While it conforms to some important objectives of the Farmland Assessment Act, e.g., the preservation of open space and beautiful countryside, here, defendant’s construction of a reservoir on farmland violates the Farmland Assessment Act’s primary objective of preserving farmland. It would be ironic indeed for an act designed to preserve farmland to serve in this instance as an incentive for the conversion of farmland to nonfarmland use. But allowing defendant to exclude rollback taxes from in lieu payments would in essence be using the Farmland Assessment Act to defeat its own primary objective by providing the State with an economic incentive to obtain farmland for conversion to use as a reservoir. If it had intended this result, the Legislature should have expressly so indicated.
For the reasons hereinabove stated, the Clerk of the Tax Court is directed to enter judgment providing that rollback taxes are to be included in the computation of the payments to *568 be made by defendant, DEP, in lieu of taxes to plaintiff, Franklin Township, for the tax year 1985.[4]
APPENDIX “A”
Actual In Lieu of Tax Payments Made By DEP in Block Lot _1985_ Taxes Due From DEP If Franklin Prevails
57 41Q 651.10 10,194.40
58 17Q 1,076.23 4.959.85
36 6Q 307.08 1,626.44
84 2.4Q 285.77 6,300.88
57 65.2Q 478.92 6,123.56
37 46Q 1,086.93 12,696.23
85 11Q 72.46 649.30
85 62Q 438.42 3.467.40
85 63Q 176.17 1.870.63
57 32Q 548.00 5,767.32
85 15Q 89.52 941.09
57 43.3Q 478.79 6,045.34
85 6Q 528.96 8.738.37
57 33Q 155.91 1,459.97
57 28Q 1,001.23 3,540.76
57 30Q 846.79 6,925.20
74 14Q 433.06 2.007.40
74 11Q 1,348.70 5.866.38
57 3Q 925.53 9,050.03
57 7Q 86.22 344.87
57 4.2Q 137.17 478.11
58 6Q 151.49 941.63
58 7Q 54.87 1,116.91
74 16Q 86.22 740.69
57 53Q 102.06 867.57
74 2Q 140.46 2,406.27
36 11Q 114.68 611.24
85 12Q 554.82 2,829.58
85 56Q & 108.86 57Q 732.87
74 5Q 39.67 170.41
58 3Q 234.00 4,754.10
74 IQ 108.38 1.636.72
85 14Q 118.02 1.323.64
74 4Q 212.73 1.529.72
74 10Q 788.64 4.620.86
37 30Q 107.06 450.08
*569 Block Lot Actual In Lieu of Tax Payments Made By DEP in _1985_ Taxes Due From DEP If Franklin Prevails
36 4Q & 5Q 449.44 1.984.08
37 7Q 243.92 2,126.92
37 44Q 450.24 2.998.08
58 14Q 756.60 3,904.27
86 9Q 77.36 486.53
58 10Q 59.45 1,220.60
58 9Q 230.37 1,372.01
85 56Q & 57 Q 280.02 1,845.71
74 77.57 362.16

 For the list of amounts see appendix “A.’

 Plaintiff argues that the measure of the payments in lieu of taxes requires strict construction of the statutory provision because it is in the nature of a tax preference. See Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). Defendant responds by arguing that tax preferences in favor of governmental agencies are to be liberally construed. See Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 440, 177 A.2d 752 (1962). Suffice it to say that these principles of statutory construction do not materially advance an appropriate analysis in this case.

 The rollback provisions in the constitutional amendment and in the subsequent legislation are identical.

 The specific calculations of additional monies due Franklin shall be in accord with the stipulation submitted by the parties as shown in appendix "A."