237 N.J. Super. 578 (1990)
568 A.2d 579
FARMLAND DAIRIES, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
THE NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION AND INTEGRITY INSURANCE COMPANY, DEFENDANTS-APPELLANTS, AND GENERAZIO ASSOCIATES AND VANESSA RICE, INDIVIDUALLY AND AS GENERAL ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF RUSSELL L. RICE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1989.
Decided January 11, 1990.
*580 Before Judges MICHELS, R.S. COHEN and BROCHIN.
Donald M. Garson argued the cause for appellants (Buttafuoco, Karpf & Arce, attorneys, Joseph Buttafuoco, on the brief).
Stanley M. Greenspan argued the cause for respondent (Cooper Perskie April Niedelman Wagneheim & Levenson, attorneys, Stanley M. Greenspan, on the brief).
The opinion of the court was delivered by COHEN, R.S., J.A.D.
Russell Rice was driving a road tractor owned by Lynn-Trem, Inc., which was pulling a trailer owned by Farmland Dairies and loaded with Farmland's cargo. Rice lost control when a tractor tire blew out, and was killed in the resulting accident. Rice's widow sued Lynn-Trem and Farmland, asserting that the accident was caused by Lynn-Trem's defective and dangerous tractor and by Farmland's negligently loaded trailer. The defense of Lynn-Trem was undertaken by Integrity Insurance Company and then pursued by New Jersey Property-Liability Insurance Guaranty Association (Association) after Integrity went into receivership. The Association stood in Integrity's position and stands there also in the present litigation. Farmland was insured by Pennsylvania Manufacturers' Association (PMA). PMA undertook to defend Farmland when Lynn-Trem's carrier refused Farmland's request to do so.
Eventually, the Rice case was settled for $235,000, with Lynn-Trem agreeing to pay $50,000 and Farmland $185,000. Farmland then filed the present action for a declaratory judgment that the Association, as Integrity's successor, was duty-bound to defend and indemnify Farmland in the Rice case; that it provided Farmland with primary coverage, and that it owed Farmland the costs of defending the Rice action. Farmland moved for summary judgment, and it was granted. The Association appealed, and we affirm.
*581 Lynn-Trem owned and operated tractors. It hauled Farmland's trailers filled with Farmland products for agreed fees. There was no written contract. The parties' understanding, however, was that Lynn-Trem would provide liability insurance to cover itself and Farmland. It provided the Integrity liability policy, but the Association takes the position that the policy did not cover this accident. PMA, Farmland's insurer which defended Farmland in the Rice action and will have to pay the $185,000 settlement unless the Association does, takes the position on Farmland's behalf that the Integrity policy covers the accident. Although Farmland asserts an underlying agreement with Lynn-Trem to insure Farmland for liability, apparently without exception, it did not join Lynn-Trem as a defendant on the thesis that Lynn-Trem failed to perform its agreement to insure.
The certificate of insurance issued by Integrity's agent names Farmland as an additional insured and describes coverage of "any non-owned undescribed trailer of Farmland Dairies while attached to [Lynn-Trem's] power units...." The certificate does not, however, purport to confer rights to particular coverages or to protect against possible exclusions.
The Integrity policy itself included for liability coverage, as "covered autos," "any trailers you don't own while attached to any [owned] power unit...." Trailer owners are included as insureds for liability:
The owner or anyone else from whom you hire or borrow a covered auto which is a trailer is an insured while the trailer is connected to another covered auto which is a power unit, ...
There is, however, a separate policy endorsement for an "additional Insured-lessor." It names Farmland as an "additional insured (lessor)." It adds to the policy any "leased auto," which is "an auto leased to [Lynn-Trem] for one year or more ... under a leasing agreement which requires [Lynn-Trem] to provide direct primary insurance for the lessor." Coverage for leased autos is narrower than coverage for autos Lynn-Trem hires or borrows. The difference is that the lessor is not *582 insured for its own acts or omissions, but only for acts or omissions of (1) Lynn-Trem, (2) Lynn-Trem's employees or agents, and (3)
Any person, except the lessor or any employee or agent of the lessor, operating a leased auto with the permission of any of the above.
The Law Division held as a matter of law that Farmland was not a lessor for one year or more, a ruling which made inapplicable the leased-auto exclusion of coverage for Farmland's own negligence, and left Farmland as an additional insured for its own negligence as the owner of a hired or borrowed auto.
Summary judgment can be granted only if the court is satisfied that there are no genuine issues of material fact challenged. R. 4:46-2. Here, the material facts are not in dispute, but only their legal significance. Summary judgment was appropriate.
Lynn-Trem provided a tractor and a driver to haul Farmland products to Farmland's destination in Farmland's trailer loaded at Farmland's premises by Farmland employees. For that service it charged a fee. It was also obliged to provide liability insurance. It returned the trailers empty. It had no right to engage return loads. It had no duty to maintain the trailers. The contractual arrangement is a simple one, and counsel does not argue here that it would be fleshed out with facts uncovered in future discovery or plenary trial.
The arrangement described is not a lease. Farmland did not turn its trailers over to Lynn-Trem for the latter's possession, use and enjoyment. Lynn-Trem neither paid rent nor credited Farmland for use of the trailers. Instead, Lynn-Trem collected a fee to move Farmland's trailers and cargo about for Farmland's benefit. There are only two areas of potential factual dispute. One is the fact that Farmland was an additional insured in one part of Integrity's policy as the owner of hired or borrowed trailers, or "non-owned" trailers, and in another part of the policy, with a major exclusion, as a "lessor" of trailers *583 for a year or more. The relevant contractual arrangement, however, is the one between Lynn-Trem and Farmland. How the Integrity policy describes Farmland is inconsequential unless it reflects the way Farmland and Lynn-Trem created and looked upon their business relationship. There is nothing to suggest that they had any idea that a policy reference to Farmland as lessor would exclude coverage, which another part of the policy provided to Farmland as owner of a hired or borrowed trailer. On the contrary, the multitudinous references to Farmland in the Integrity policy convey the intention that, one way or another, Farmland would receive the seamless insurance coverage that it asked for and Lynn-Trem agreed to provide. We are fully aware of the printed words in the policy and the natural focus on them in litigation conducted by and for the benefit of insurers. The relationship that matters, however, is the one between Lynn-Trem and Farmland, and that relationship simply was not a lease of Farmland's trailers.
The Association next argues that its liability is limited to "covered claims" as defined by N.J.S.A. 17:30A-5(d):
"Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or under writing association, as subrogation recoveries or otherwise.
The provision is comprehensively analyzed in Sussman v. Ostroff, 232 N.J. Super. 306 (App.Div. 1989), which held that the workers' compensation lien was not enforceable against an injured worker's recovery from a third party tortfeasor covered by the Association. This case is different. Sussman does not say that the Association may not be forced to provide defense and coverage it wrongfully denies. Here, it is enough to say that coverage contests are not statutorily barred, even where the real beneficiary of the contest against the Association is an insurer who will have to pay if the Association does not.
Farmland also argues that N.J.S.A. 17:30A-5(d) excludes from covered claims "counsel fees for prosecuting suits for claims against the association." True enough, but Farmland's claim for counsel fees was for defending against the Rice action *584 and not for prosecuting this one. It therefore is not barred by the quoted exclusion.
Finally, the Association raises a question, which it poses in these words:
Since Russell Rice was an employee of Farmland Dairies his claim against Farmland should have been denied and there was no coverage under the Integrity policy.
The Integrity policy has a workers' compensation exclusion. The Association does not seriously argue that Rice was a Farmland employee as a matter of law. Instead, it asserts that there is a real factual issue yet to be resolved. And indeed there is. It may be that although Lynn-Trem paid Rice to drive its tractors, Farmland effectively directed and controlled Rice's work, could have had him fired, and deducted (and presumably paid) his union dues. In those circumstances, dual employment is a possible legal conclusion which would have barred Rice's recovery from Farmland. See Antheunisse v. Tiffany & Co., Inc., 229 N.J. Super. 399 (App.Div. 1988), and cases cited there.
The problem is that this is an issue which the Association never raised in the Law Division. For that reason, Farmland objects that it is too late to raise it now, and we agree. Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542 (App. Div. 1959), certif. den. 31 N.J. 554 (1960). An additional defect in the Association's position is that it never raised the issue as a defense to Farmland's liability when it should have been defending Farmland in the Rice action. (We note that the Association made the defense in the answer it filed to the Rice complaint on Lynn-Trem's behalf.)
The summary judgment is affirmed.