682 A.2d 739

MATERIAL DAMAGE ADJUSTMENT CORPORATION AS SERVICING CARRIER FOR THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, PLAINTIFF–APPELLANT, v. THE NEW JERSEY PROPERTY–LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1996—Decided September 26, 1996.

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*John T. Grogan, Jr.* argued the cause for appellant (*Maloof, Lebowitz, Connahan & Oleske,* attorneys; *Richard A. Kennedy,* on the brief).

*John A. Patti* argued the cause for respondent (*Patti & Policastro,* attorneys; *Mr. Patti,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal from an order dismissing plaintiff's complaint, which sought to compel defendant to submit to arbitration under *N.J.S.A.* 17:28–1.1 respecting uninsured motorist ("UM") coverage for one Peter Christo. Christo suffered injuries in a 1990 collision with an unidentified motor vehicle while driving a car owned by his employer and insured by MCA Insurance Company.

Plaintiff, Material Damage Adjustment Corporation (MDAC), is a servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association (JUA), which insured Christo's personal automobile. The employer's MCA policy provided $100,000 of UM coverage. Christo's JUA policy also provided UM coverage.

*N.J.S.A.* 17:28–1.1a(2) provides in pertinent part:

All motor vehicle liability policies shall ... include coverage for the payment of all or part of the sums which the person insured thereunder shall be legally entitled to recover as damages from owners or operators of uninsured motor vehicles ...

When the present complaint was filed, Christo was about to proceed in an uninsured motorist arbitration against JUA's servicing carrier, MDAC. His eligibility for UM coverage because of the unidentified status of the other vehicle appears to be undisputed. Christo had first filed his claim for UM benefits with MCA, which went into liquidation in 1993. By reason of the MCA insolvency, the New Jersey Property–Liability Insurance Guaranty Association (PLIGA) became responsible to honor a "covered claim," made under policies issued by MCA. *N.J.S.A.* 17:30A–5d, 30A–8a(1); *Blew v. Brind Leasing,* 216 *N.J.Super.* 359, 361, 523 *A.*2d 1076 (App.Div.1987).

When PLIGA received Christo's claim, it responded with a letter advising that the claim would be "defer[red]" because it appeared that he could recover under his own automobile liability policy. Christo was advised to submit the claim to his carrier. According to MDAC, that claim was submitted, and "honored" in the sense that it is "presently being defended in the forum of UM arbitration." [1]

This action was commenced by MDAC on verified complaint and order to show cause to require that PLIGA "honor its [UM]

---

[1] Our inquiry discloses that the JUA Uninsured Motorist Coverage insuring agreement contains an "Other Insurance" clause which provides:

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with

coverage obligation" under the MCA policy by participating in the pending UM arbitration and contributing to Christo's recovery on a pro-rata basis.

On June 23, 1995, the Law Division judge dismissed the complaint, ruling that MDAC's demand that PLIGA participate in the Christo UM arbitration was prohibited by the language of *N.J.S.A.* 17:30A–5d. That section excludes from treatment as a "covered claim" under the New Jersey Property–Liability Insurance Guaranty Association Act (the Act) "any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries *or otherwise* ... (emphasis added)." The judge concluded that the MDAC claim "is clearly otherwise, otherwise including everything ..." and that PLIGA "is not responsible to join in an arbitration where there is a responsible solvent insurer liable for the claim."

MDAC, as JUA's servicing carrier, appeals from this dismissal. We reverse, as this suit to compel PLIGA to participate in arbitration is not an attempt to recover an amount as a subrogation recovery or otherwise, but concerns resolution of a coverage question not barred by *N.J.S.A.* 17:30A–5d or the asserted solvency of Christo's insurance carrier.

## I. *Standing*

■ Although the Law Division judge did not address the issue, PLIGA asserted below and renews in response to the appeal its argument that MDAC lacks standing. PLIGA contends that Christo is "the only person who may have standing to assert this particular right." We disagree.

MDAC properly sought to join PLIGA in its arbitration with Christo so that their respective *pro rata* shares could be fixed

---

respect to a vehicle you do not own shall be excess over any other collectible insurance.

The policy also provides for arbitration if JUA and the insured do not agree respecting entitlement to, or the amount of, damages.

when Christo's damages were determined. *See Jaworski v. Motor Club of America Ins. Co.,* 182 *N.J.Super.* 651, 442 *A.*2d 1091 (Law Div.1981); Cynthia M. Craig & Daniel J. Pomeroy, *New Jersey Auto Insurance Law,* § 24:4, at 303 (1995). MDAC's effort to join PLIGA in the arbitration is not a "claim", but a demand that each carrier respond to Christo's claim. It was like a third party joinder, necessary to protect both MDAC and Christo, particularly in light of this state's strong entire controversy policy. *See Prevratil v. Mohr,* 145 *N.J.* 180, 678 *A.*2d 243 (1996).

We note that PLIGA incorrectly asserts in its brief that Christo did not ask to have his claim processed by it. In fact, Christo filed for UM benefits initially with MCA, and thereafter PLIGA assumed the MCA obligations. It was PLIGA however, that advised Christo that his claim would be deferred pending the filing and resolution of his claim with his personal carrier, *i.e.,* JUA.

Under the Act, PLIGA is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." *N.J.S.A.* 17:30A–8a(2). While the Act permits defendant to defer a claim against it if there is also a potential claim against another guaranty association; it does not provide for a deferral where there is a claim against another insurer.

By contrast, some states have provided by statute that a guaranty fund can defer a claim pending exhaustion of rights to claim against other insurance companies. *See, e.g.,* Paul G. Roberts, Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Non-duplication of Recovery Clause,* 74 *Iowa L.Rev.* 927, 937 (1989) ("The Guaranty Fund's non-duplication of recovery clause ... requires any person seeking recovery from the Fund who also has a claim under 'another policy' to exhaust that other policy and to credit any amount recovered against the liability of the Fund"). *See also D.C.Code Ann.* § 35–3909(a) ("Any person having a claim against an insurer

under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under such a policy"); *Haw.Rev.Stat. Ann.* § 431:16–112(a) (same).

Currently pending in the Legislature is a bill which would amend the Act to permit PLIGA to defer claims if other coverage is available from an insurance company. *See* A. 810, 207th Leg., 1st Sess. § 2 (1996) (proposed amendment to *N.J.S.A.* 17:30A–12). This bill would provide that "Any person having a claim against an insurer ... under any provision in an insurance policy other than a policy of an insolvent insurer ... shall be required to exhaust first his right under that other policy" prior to pursuing a claim against the guaranty fund. As of the date of this opinion, that bill has not been enacted.

Thus, under the applicable state of the law, Christo's claim should have been processed by PLIGA as it was "deemed the insurer" by *N.J.S.A.* 17:30A–8a(2). MDAC had standing to request PLIGA's joinder in the UM arbitration so that the relative responsibility of each insurer and the amount of damages could be fixed in a single proceeding.

## II. *MDAC's Challenge to the Law Division's Interpretation of N.J.S.A. 17:30A–5d*

MDAC argues that the Law Division judge erred in ruling: (a) that the presence of a "solvent" insurer (i.e. JUA) of Christo's UM claim excused PLIGA from any obligation to participate in the arbitration; and (b) that the request to join PLIGA in that proceeding constituted a demand for payment of a claim to an underwriting association as "subrogation or otherwise."

As subrogation is clearly not in issue, the latter (b) rationale addresses whether: (1) MDAC is making a demand for payment of a claim and, (2) if so, whether it is an "or otherwise" claim in the sense contemplated by the legislature.

### (a) *The "solvent" insurer rationale*

■ We can detect no present legislatively stated or implied policy that a person having a UM claim against an insolvent

insurer, but who also has a similar claim against a different insurer, must exhaust rights against the other insurer before turning to the guaranty fund, particularly where JUA is the other insurer. Our sense that the statute does not so require is, of course, bolstered by the pending effort to enact A. 810, which would alter present law.

The financial difficulties, indeed technical insolvency, of JUA at the time the Christo claim was presented, have been both legislatively and judicially recognized. *See Ainsworth v. State Farm Mut. Ins. Co.,* 284 *N.J.Super.* 117, 126–27, 663 *A.*2d 1365 (App.Div. 1995), *certif. denied,* 143 *N.J.* 328, 670 *A.*2d 1068 (1996); *N.J.S.A.* 17:33B–3. In *Ainsworth,* we noted that claimants who settle or obtain judgments against JUA were then waiting up to eighteen months for their money. In consequence, we permitted an accident victim injured by a JUA-insured vehicle to proceed against her UM carrier, rather than wait for payment under the JUA deferral plan. We reasoned that the UM carrier would then be able to present its subrogated claim against the tortfeasor's insurer, JUA, and contrasted that with inability of that insurer to present a subrogated claim to PLIGA because of the *N.J.S.A.* 17:30A–5d prohibition.

Here, however, JUA is not the tortfeasor's insurer. It insured Christo for UM under an other-insurance pro-rata clause, just as did MCA.

Given this state's policy to favor innocent victims of highway accidents, see *Ainsworth, supra,* 284 *N.J.Super.* at 130, 663 *A.*2d 1365, we doubt that the legislature intended to force Christo to await the questionable date of payment of any arbitration award against the insolvent JUA without knowing whether he could proceed against PLIGA or whether PLIGA was bound by the amount of the arbitration award.

Moreover, we question whether, despite its understandable desire to insulate PLIGA from subrogation-type claims by insurers,

the legislature intended to add to the financial problems of the JUA by preventing it from seeking to enforce the other-insurance provision in its UM coverage clause.

Significantly, *N.J.S.A.* 17:28–1.1c, which includes an "anti-stacking" provision for uninsured motorist coverage, also provides in part that where an insured has "uninsured motorist coverage available under more than one policy, any recovery shall ... be prorated between the applicable coverages as limits of each coverage bear to the total of the limits." The lower court's interpretation of *N.J.S.A.* 17:30A–5d frustrates the articulated mandate of *N.J.S.A.* 17:28–1.1c and ignores the pro-rata clause of the insured's personal policy. Absent express legislative exception, the insolvency of MCA offers no basis to require Christo to resort first to his JUA policy.

(b) *The "subrogation or otherwise" rationale*

■ If, after the full extent of Christo's UM aggregate claim were determined by arbitration, MDAC were to elect to pay the full amount to Christo, relying on its subrogation rights against MCA (PLIGA), those rights might arguably be deemed cut off by *N.J.S.A.* 17:30A–5d. That is not the present case, however. Rather, MDAC, as servicing representative for the legislatively created JUA, is here seeking only to compel PLIGA to join in the arbitration which fixes the amount of Christo's entitlement *and*, pursuant to *N.J.S.A.* 17:28–1.1c, the prorated allocation (i.e., the coverage) as to each applicable UM policy. Thus, no claim is involved, much less an "or otherwise" claim for payment. *See Farmland Dairies v. N.J. Property–Liability Ins. Guaranty Ass'n.*, 237 *N.J.Super.* 578, 583, 568 *A.*2d 579 (App.Div.1990) (coverage contest between insurer and PLIGA not prohibited by *N.J.S.A.* 17:30A–5d even if the insurer is a principal beneficiary of the resulting decision).

Another factor to consider is the limitation of the arbitrator's authority. That authority is limited by the other insurance clause in the JUA insurance contract. *See Scotch Plains–Fanwood Bd. of Ed. v. Scotch Plains Ed. Ass'n.*, 139 *N.J.* 141, 149, 651 *A.*2d 1018 (1995).

Finally, we doubt that the legislature intended to prefer the guarantee association over its other creation, the financially strapped JUA, or that it intended to relegate insureds solely to an uncertain recovery against JUA. It is paradoxical that in *Ainsworth, supra*, we deemed JUA to be insolvent, and allowed a motor vehicle accident victim who had a claim against a JUA insured to proceed directly against the applicable UM carrier. Christo's need to resort to an insolvent JUA itself might arguably have triggered UM entitlement against PLIGA.

In these circumstances, we believe it to be consistent with legislative intent to interpret *N.J.S.A.* 17:30A–5d by preserving PLIGA's amenability to be joined in the arbitration of the Christo claim, subject to such allocation under the respective policies as may be deemed appropriate by the arbitrator in light of the amount of damages Christo is found to have suffered.

The order of dismissal under review is reversed.

We remand solely for entry of a judgment compelling defendant PLIGA to submit to *N.J.S.A.* 17:28–1.1 arbitration among Christo, MDAC and PLIGA.