871 A.2d 728 (2005)
377 N.J. Super. 102
ARCNET ARCHITECTS, INC., Plaintiff-Appellant,
v.
NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 2005.
Decided April 25, 2005.
Anthony Argiropoulos, Lawrenceville, argued the cause for appellant (Fox Rothschild, attorneys; Jack L. Kolpen and Mr. Argiropoulos, of counsel and on the brief).
Mark M. Tallmadge, New York City, argued the cause for respondent (Bressler, Amery & Ross, attorneys; Mr. Tallmadge, on the brief).
Before Judges LEFELT, FUENTES and FALCONE.
The opinion of the court was delivered by
*729 LEFELT, J.A.D.
In 2004, the Legislature amended the New Jersey Property-Liability Insurance Guaranty Association Act (Act), N.J.S.A. 17:30A-1 to -20, to exclude specifically from the definition of covered claims "counsel fees and other claim expenses incurred prior to the date of [the insurance company's] insolvency." L. 2004, c. 175, § 2. This amendment, approved on December 22, 2004, also provided that it "shall take effect immediately and shall apply to covered claims resulting from insolvencies occurring on or after that date." Id. at § 9. The amendment thus settled, at least prospectively, an ongoing dispute as to whether the Property-Liability Insurance Guaranty Association (PLIGA) should pay counsel fees and claim expenses incurred by an insurer before its insolvency. This appeal addresses pre-insolvency counsel fees and litigation expenses that were incurred before the amendment's effective date. Judge Uhrmacher, in the trial court, decided about two years before the Legislature amended the Act that these costs were not "covered claims," and therefore were not payable by PLIGA. We affirm.
Plaintiff, ARCNET Architects, Inc., is a New Jersey architectural firm that was insured by Reliance Insurance Company. After ARCNET was sued in two third-party complaints for professional malpractice, Reliance agreed to supply a defense. Under the pertinent insurance policy, at ARCNET's recommendation, Reliance designated Fox, Rothschild, O'Brien & Frankel, LLP (Fox Rothschild) as defense attorneys.
Under the pertinent policy, Reliance was to pay "sums in excess of the Deductible amount ... which [ARCNET as the insured] shall become legally obligated to pay as Damages and Claims Expenses." "Claims Expenses" included "reasonable and necessary fees charged by [the designated defense attorney and] all other fees, costs and charges resulting from the investigation, adjustment, defense, and appeal of a Claim." Pursuant to the policy, Reliance paid all of Fox Rothschild's defense costs and fees associated with the malpractice claim until Reliance became insolvent.
After Reliance's insolvency, ARCNET, who had a general retainer with Fox Rothschild, paid the firm over $50,000 in costs and fees, which had been incurred before Reliance became insolvent. ARCNET asserts that over $50,000 in costs and fees still remains unpaid from fees and expenses also incurred before the insolvency. As a result, ARCNET sought reimbursement from PLIGA of the amount it had already paid, as well as the unpaid sum.
PLIGA is a statutorily-created private, nonprofit, and unincorporated legal entity comprised of licensed insurers. N.J.S.A. 17:30A-6; R.R. Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co., 85 N.J. 384, 389-90, 427 A.2d 66 (1981). PLIGA's obligations are derived from the Act, which is based upon the State Post-Assessment Insurance Guaranty Association Model Act. Carpenter Tech. Corp. v. Admiral Ins. Co., 172 N.J. 504, 515, 800 A.2d 54 (2002); Edith K. Payne, Surviving Insurer Insolvency, 172 N.J. Lawyer 28, 30 (1995). The purpose of the Model Act and this State's Act was to "minimize financial loss to claimants or policyholders because of the insolvency of an insurer." N.J.S.A. 17:30A-2a; Carpenter Tech. Corp., supra, 172 N.J. at 515, 800 A.2d 54.
Under the Act, PLIGA manages and administers claims against an insolvent insurer. N.J.S.A. 17:30A-6, -8. PLIGA is "obligated to the extent of the covered claims against an insolvent insurer incurred prior to or 90 days after the determination of insolvency...." N.J.S.A. *730 17:30A-8a(1). It is "deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." N.J.S.A. 17:30A-8a(2).
PLIGA's responsibility to pay claims under an insolvent insurer's policy is limited to the payment of "covered claims." It is not "a panacea for all problems caused by insurance company insolvencies." Carpenter Tech. Corp., supra, 172 N.J. at 524, 800 A.2d 54. It was not designed "as a form of reinsurance for every insurer who becomes insolvent." Id. at 524-25, 800 A.2d 54. The Act "requires [PLIGA] to stand in the shoes of its insolvent member insurance companies only in proceedings involving `covered claims.'" Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 157 N.J. 580, 584, 725 A.2d 1093 (1999) (citing N.J.S.A. 17:30A-8a(2)).
The Act, in pertinent part before the 2004 amendment, defined "covered claim" as "an unpaid claim ... which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer...." N.J.S.A. 17:30A-5d.
When the subject expenses were incurred, there were some express statutory exclusions to "covered claims." For example, the Act excluded as a "covered claim" "amounts for interest on unliquidated claims, punitive damages unless covered by the policy, counsel fees for prosecuting suits for claims against the association, and assessments or charges for failure of such insolvent insurer to have expeditiously settled claims." Ibid.
ARCNET contends that its pre-insolvency defense costs are "covered claims" under the Act before the amendment. Specifically, ARCNET asserts that its defense costs fall within the Act's "covered claims" definition because the costs "arise[ ] out of and [are] within the coverage, and [are] not in excess of the applicable limits of [the Reliance] insurance policy." Ibid.
ARCNET's policy with Reliance, however, required the carrier to "pay on behalf of the Insured all sums in excess of the Deductible amount ... which the Insured shall become legally obligated to pay...." Here, the contract for defense costs was exclusively between Fox Rothschild and Reliance, and ARCNET was not "legally obligated to pay." Before its insolvency, Reliance paid all of these costs, and ARCNET was entitled to this service by virtue of its premium payments to Reliance.
ARCNET's reliance upon Farmland Dairies v. New Jersey Property-Liability Insurance Guaranty Ass'n, 237 N.J.Super. 578, 568 A.2d 579 (App.Div.1990), as support for its position is misplaced. In Farmland, suit was brought against the owners of a tractor and trailer after the tractor's driver was killed when a tractor tire blew out. Id. at 580, 568 A.2d 579. After the tractor owner's insurer went into receivership, PLIGA undertook the tractor owner's defense, but like the insolvent carrier, declined to defend the trailer owner. Ibid. The trailer owner sought declaratory judgment that PLIGA, as the successor of the tractor owner's insolvent insurer, was duty bound to defend and indemnify the trailer owner and that it owed the trailer owner the costs of defending the lawsuit. Ibid.
We affirmed summary judgment in favor of the trailer owner, holding that PLIGA should have defended and indemnified the trailer owner as an additional insured under the tractor owner's policy. Id. at 582-83, 568 A.2d 579. We found that because the trailer owner's "claim for counsel *731 fees was for defending against the ... action and not for prosecuting [the claim against PLIGA]," it was "not barred by the ... exclusion [for suits against PLIGA]." Id. at 583-84, 568 A.2d 579.
Farmland never analyzed or held that pre-insolvency defense costs were "covered claims" because there was no issue regarding such claims. It was not clear when the costs were incurred in Farmland because the insolvent carrier never retained counsel on behalf of the trailer owner. We therefore never focused on attorney fees that were contracted for by the insurance company but not paid before the company became insolvent.
Out-of-state jurisdictions with similar or nearly identical statutes, also patterned on the Model Act, have all held that a claim for pre-insolvency attorney fees is not a covered claim. See, e.g., Sifers v. Gen. Marine Catering Co., 892 F.2d 386, 399-400 (5th Cir.1990) (dealing with the Louisiana Insurance Guaranty Association); White v. Alaska Ins. Guar. Ass'n, 592 P.2d 367, 368-69 (Alaska 1979); Fla. Ins. Guar. Ass'n v. Price, 450 So.2d 596, 597 (Fla.Dist.Ct.App.), petition for review dismissed by, 453 So.2d 1365 (Fla.1984); Maguire, Ward, Maguire & Eldredge v. Idaho Ins. Guar. Ass'n, 112 Idaho 166, 730 P.2d 1086, 1087-88 (Ct.App.1986); Comm'r of Ins. v. Mass. Insurers Insolvency Fund, 373 Mass. 798, 370 N.E.2d 1353, 1354, 1356-57 (1977); Metry, Metry, Sanom & Ashare v. Mich. Prop. & Cas. Guar. Ass'n, 403 Mich. 117, 267 N.W.2d 695, 696-97 (1978); Zuger v. N.D. Ins. Guar. Ass'n, 494 N.W.2d 135, 136-38 (N.D.1992); Ohio Ins. Guar. Ass'n v. Simpson, 1 Ohio App.3d 112, 439 N.E.2d 1257, 1258-59 (1981); Greenfield v. Pa. Ins. Guar. Ass'n, 256 Pa.Super. 136, 389 A.2d 638, 639-40 (1978).
ARCNET acknowledges the obvious relevance of these decisions by out-of-state jurisdictions construing statutes based upon the Model Act. Cohen v. Southbridge Park, Inc., 369 N.J.Super. 156, 162, 848 A.2d 781 (App.Div.2004); State v. Weissman, 73 N.J.Super. 274, 281, 179 A.2d 748 (App.Div.), certif. denied, 37 N.J. 521, 181 A.2d 782 (1962). ARCNET, nevertheless, argues that none of these jurisdictions' statutes specifically excluded only counsel fees and expenses incurred in suits against the guaranty association, as did New Jersey before the amendment. Thus, ARCNET argues that the construction aid, expressio unius est exclusio alterius, Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112, 853 A.2d 940 (2004), suggests that the Legislature, before the amendment, intended to include pre-insolvency costs as covered claims by not explicitly mentioning them as an exclusion. We reject this argument for four reasons.
First, the construction aid utilized by ARCNET is but an aid and is not controlling. The "maxim is merely an aid in determining legislative intent, not a rule of law.... [B]lind and mechanical application can often lead ... to an `improper interpretation' of the statute being construed." Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986) (citations and internal quote omitted).
Second, such construction canons "long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose." Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548, 558 n. 23 (1983) (citations omitted). The Act's primary purpose is "to minimize financial loss to claimants or policyholders because of the insolvency of an insurer." N.J.S.A. 17:30A-2a. Here, the real party in interest, Fox Rothschild, is neither a policyholder nor a proper claimant under the Act. "[O]nly the claims of insureds and *732 innocent victims of incidents for which insurance coverage was purchased are entitled to recover against the statutorily created fund. Those whose claims arise from separate contracts or dealings with an insolvent insurer are merely creditors whose redress lies elsewhere." Zuger, supra, 494 N.W.2d at 138. Accordingly, Fox Rothschild must seek payment for its legal fees and expenses from Reliance's estate.
The fact that ARCNET had a pre-existing 1998 retainer agreement with Fox Rothschild for general representation is an insufficient distinction to change the result. The fees asserted here did not arise out of any general representation that Fox Rothschild performed for ARCNET. Instead the fees arose out of, and were incurred pursuant to, the agreement between Reliance and Fox Rothschild. ARCNET's payment of a portion of these expenses must be deemed, under the Act, to have been voluntary and gratuitous. The Legislature intended "to conserve limited Association resources to better assure their availability to serve core purposes." Carpenter Tech. Corp., supra, 172 N.J. at 517, 800 A.2d 54.
Third, the legislative history of the amendment includes a statement indicating that the amendment's purpose was "to clarify what types of claims are covered and the types of claims, damages and expenses which are not covered by the act." See Senate Commerce Committee Statement to Senate Committee Substitute for S.702 and 1580 (May 17, 2004). The Committee Statement "is obviously not dispositive." State v. Biegenwald, 106 N.J. 13, 64, 524 A.2d 130 (1987). However, amendments carry "great weight" in determining the intention of the original statute, Edwards v. Mayor & Council of Moonachie, 3 N.J. 17, 24-25, 68 A.2d 744 (1949), and constitute "strong evidence of what the legislature intended by the first statute." Boyd v. Marini, 132 N.J.Super. 324, 328, 333 A.2d 559 (App.Div.1975) (quoting 2A Sutherland on Statutory Construction § 49.11 at 265 (4th ed.)).
Finally, we find unavailing ARCNET's argument that because it was obligated to pay the defense costs under the common law doctrines of quantum meruit or unjust enrichment, the costs were covered claims. These doctrines "`rest [ ] on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'" Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68, 796 A.2d 238 (2002) (citations omitted). The doctrines are inapplicable here because ARCNET, in effect, paid for the legal defense services of Fox Rothschild by paying the premiums on the Reliance insurance policy. There is no inequity or injustice in ARCNET retaining the benefit of these legal services without paying Fox Rothschild. Whatever claims Fox Rothschild may have against Reliance must be pursued elsewhere.
We conclude that the 2004 amendment to the Act, which clarified the definition of "covered claim," has removed all doubt as to the Legislature's intended meaning of "covered claims," prior to the amendment. The pre-insolvency attorney fees and other claim expenses incurred in this case are not and have never been covered claims.
Affirmed.